STATE, Plaintiff-Appellant, v. BENOIT, Defendant-Respondent.

*No. 76–591–CR. Submitted on briefs March 8, 1978.—Decided May 2, 1978.*
(Also reported in 265 N. W. 2d 298.)

392

For the appellant the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *Nadim Sahar,* assistant attorney general.

For the respondent the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender, and *Richard M. Sals,* assistant state public defender.

CALLOW, J. The issues in this case involve the propriety of the trial court's decision to suppress (1) items seized pursuant to a search warrant, and (2) certain oral statements of the defendant made to police officers while the defendant was being interrogated. The case arises out of an armed robbery of a Stop-N-Go store in the city of Green Bay on January 25, 1977. On February 11, 1977, the State sought a search warrant to search the home of a suspect, Daniel Benoit. The items to be searched for were a green snorkel jacket with fur trim, blue jeans, black leather gloves, round wire-rim glasses, a brown 8 x 10 paper bag, and a .38 caliber revolver. All of these items were part of the store clerk's description of the robber. At the close of the search warrant hearing, the Hon. John C. Jaekels, County Judge, issued the warrant. The search produced a green snorkel jacket with a repair bill made out to Donald Benoit in the pocket.

The defendant was charged with armed robbery, contrary to sec. 943.32 (1) (b), Stats. A preliminary hearing was held, and the defendant was bound over for trial. The defendant then moved to suppress the evidence obtained from the search, as well as an alleged oral statement made by the defendant to the police shortly before he was charged with the crime. The statement was in response to the question, "You know you weren't wearing a mask," to which the defendant answered, "I know." The State in turn moved for an order under sec. 971.31 (3), Stats., that the statement challenged

by the defendant and three other oral statements made by the defendant during the police interrogation were voluntary. A *Goodchild* hearing was held on March 17, 1977, before the Hon. James W. Byers, County Judge. However, Judge Byers made no finding of whether the statements sought to be used by the State were voluntary. Instead, Judge Byers concluded that the defendant's statements were not against interest and suppressed them on that ground.

At the conclusion of the *Goodchild* hearing, Judge Byers also ruled upon the admissibility of the physical evidence obtained in the search. Judge Byers concluded that because the testimony at the search warrant hearing created only a suspicion that the items sought could be found at Mr. Benoit's home the warrant lacked probable cause. Therefore he suppressed both the fruits of the search and the oral statements made by the defendant to the police and prohibited the use of any of this evidence at trial. The State has appealed both portions of the order.

## I. *Was There Probable Cause to Issue the Search Warrant?*

A search warrant may issue only upon a finding of probable cause by a neutral and detached magistrate. However, the showing sufficient to establish probable cause necessary for the issuance of a search warrant is less than the evidence which would justify conviction and less than the evidence required in a preliminary examination. *State v. Starke,* 81 Wis.2d 399, 411, 260 N.W.2d 739 (1978) ; *State ex rel. Furlong v. Waukesha County Court,* 47 Wis.2d 515, 522, 177 N.W.2d 333 (1970) ; *United States v. Ventresca,* 380 U.S. 102, 109 (1965). The search warrant may be based on hearsay

information as long as it is shown that the information is substantially reliable. *Jones v. United States,* 362 U.S. 257, 270 (1960).

On review of the issuance of this search warrant we are confined to the record established before Judge Jaekels. *State v. Starke, supra* at 408; *Scott v. State,* 73 Wis.2d 504, 508, 243 N.W.2d 215 (1976); *Aguilar v. Texas,* 378 U.S. 108, 109 (1964). We must be satisfied that Judge Jaekels was apprised of sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime and that the objects sought will be found in the place to be searched. *State v. Starke, supra* at 408; *Morales v. State,* 44 Wis.2d 96, 101, 170 N.W.2d 684 (1969).

In support of the warrant, the State presented an affidavit of Lt. Norman Daniels stating the grounds for the warrant as:

"Statements taken from (1) the Stop & Go Store clerk after January 25, 1977, who was the victim of the armed robbery on said date, about the crime & description of the individual who. robbed her; (2) a John Doe informant who knows the person who committed the armed robbery at the Stop & Go Store on January 25, 1977, and has given Lt. Daniels numerous facts about the suspect which corroborate the Stop & Go clerk's story."

The court also heard oral testimony from another detective and from the informant himself. The John Doe informant was the suspect's brother, Charles Benoit.[1] Charles testified that he called his brother Donald on

---

[1] At the search warrant hearing the informant was identified as the suspect's brother, but he was referred to in the record as "John Doe" to preserve his anonymity. However, at the preliminary hearing the informant testified in person in the presence of his brother.

the phone, and his brother told him that he committed an armed robbery at the Stop-N-Go. He doubted his brother's assertion, so he checked the newspaper for an article about the robbery. After he found the article, he called his brother back and said: "I guess you did do it then," and his brother replied, "Yes." His brother wanted him to read the article to him over the phone. He read it, and he stated his brother said: "[G]ee the lady at the store saw more than he wanted her to because he had his face covered up and everything else." Charles also testified that, although the paper reported the robber took $50, his brother told him he got approximately $67. He stated that his brother wears a green snorkel jacket kept at his home at 922 Division Street and that his brother also wears wire-rimmed glasses, black leather gloves, and blue jeans. His brother told him at a later date that the gun he used in the robbery was a .38 revolver. Neither the State nor the court inquired as to Charles Benoit's reliability as an informer.

Charles' testimony was corroborated by the testimony of Sgt. Richard Rice who testified that the store clerk told him the robber was in his early twenties, about five feet[2] tall, slender build, wearing wire-rimmed glasses, a fur-trimmed green snorkel jacket, and blue jeans; that the robber entered the store with a brown paper Prange bag, pointed a gun at her; and that he told her to put the money in the bag or "I will blast you."

Judge Jaekels observed that he did not find the jacket, blue jeans, glasses, and gloves very "unique." He asked the State whether it believed the items to be seized were still at the defendant's residence and whether if the items were found and seized, they would be evidence against Donald Benoit in a criminal prosecution. The

---

[2] The clerk's testimony at the preliminary hearing shows this evidence to be erroneous. She testified that his height was approximately 5'8" or 5'9". The defendant does not make an issue of this discrepancy. We conclude that this is a transcript error.

State answered both questions, "yes," and Judge Jaekels found probable cause.

Both the State and the defendant agree that the store clerk is a citizen informant and that her hearsay declarations contained in Lt. Daniels' affidavit and Sgt. Rice's testimony are reliable for purposes of a search warrant hearing even without some actual showing of reliability. But both sides also agree that her description of the robber does not in itself sufficiently distinguish him from the general populace to establish probable cause. Both sides agree that a finding of probable cause depends upon the sufficiency of the oral testimony of the informant Charles Benoit.

The defendant contends that Charles Benoit's statement that his brother told him he committed the Stop-N-Go robbery is hearsay and that the trial court was not entitled to rely on it absent any evidence that Charles Benoit is a reliable informant. The defendant contends that because Charles is an informant the *Aguilar* restrictions apply. In *Aguilar v. Texas, supra* at 114, the Supreme Court held that, where a police officer's affidavit is based on information supplied by an unnamed informant, the officer must provide the magistrate with (1) the underlying circumstances from which he concludes that the informant is reliable, and (2) information showing the manner in which the informant obtained his information is reliable. *Scott v. State, supra* at 509; *Rainey v. State,* 74 Wis.2d 189, 197, 246 N.W.2d 529 (1976).

This court has stated that an *Aguilar* situation exists when the informant does not appear in person before the magistrate, and the magistrate must determine the informant's reliability from the facts sworn to by law enforcement officers. *Rainey v. State, supra* at 198; *Morales v. State, supra* at 102–3. As the Supreme Court

in *Aguilar* recognized, without such a showing that the unnamed informant is reliable:

". . . 'the inferences from the facts which lead to the complaint' will be drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of ferreting out crime,' [Citations omitted]. . . ." *Aguilar v. Texas, supra* at 115.

But in *Rainey* this court emphasized that, when the informant testifies personally, the magistrate is "in a position . . . to personally observe the informant and to evaluate for himself, first hand, the informant's reliability and credibility as [is] his judicial function." 74 Wis.2d at 199. Thus in *Rainey* this court upheld a finding of probable cause based solely on the informant's personal testimony that he observed the defendant sell narcotics. The court so held despite the fact that the identity, the reliability, or the truthfulness of the informant was not established. Similarly, in *Morales v. State, supra,* probable cause was established by the personal, sworn testimony of an informant Alvarez who testified to his participation in a drug deal with the defendant. We said that a showing that Alvarez was credible was unnecessary.

The fact that Charles Benoit testified to declarations of the suspect, rather than to the direct observation of the suspect's criminal activity, as was the case in *Rainey* and *Morales,* does not diminish the sufficiency of this evidence to support a finding of probable cause for the search warrant because Judge Jaekels had the opportunity to observe the informant firsthand and evaluate his credibility himself. In fact, at the trial the informant's testimony concerning his brother's confession of the crime will be evidence of an admission by a party

opponent and will not be hearsay. Sec. 908.01(4)(b)1, Stats.

Although Charles Benoit was not shown to have previously given the police reliable information or to be a reliable person, he was identified as the suspect's brother. His testimony described in detail how his brother told him that he robbed the Stop-N-Go. He testified that he corroborated his brother's story by checking the newspaper. His testimony concerning his brother's clothes, though not highly probative, corroborated the information supplied by the clerk. Most important, the magistrate personally observed his demeanor and evaluated his testimony firsthand. We hold that the evidence before Judge Jaekels supports a neutral and detached determination of probable cause.

Judge Byers did not suppress the evidence obtained from the search because Charles Benoit was unreliable but because the testimony did not specifically show that the items to be seized were still at the suspect's residence and because Judge Jaekels must have granted the warrant to accommodate the State. However, Charles Benoit did testify that he was familiar with the suspect's house. He testified that the jacket in particular could be found at the house. The evidence adduced at a search warrant hearing is to be evaluated in a commonsense rather than a grudging or hypertechnical manner. *United States v. Ventresca, supra* at 109; *State v. Starke, supra* at 410. The fourth amendment does not preclude the judge at a search warrant hearing from drawing the reasonable inferences which reasonable persons could draw from the evidence. *State v. Starke, supra.* The fact that the informant was the suspect's brother who knew the place to be searched

was his brother's residence, coupled with the fact that the hearing was held only twelve days after the robbery, permits a reasonable inference that the items listed in the warrant could still be found in the place to be searched. This is all that was required. The fact that Judge Jaekels also asked the district attorney if he believed the items to be still at the suspect's premises did not entitle Judge Byers to conclude that Judge Jaekels had granted the warrant simply to accommodate the State. The evidence adduced at the search warrant hearing provided ample information to support a finding of probable cause for the issuance of the warrant, and the trial court erred in suppressing the fruits of the search.

II. *Should the Trial Court Have Suppressed the Oral Statements Made By the Defendant to the Police Because It Was Not a Statement Against Interest?*

On February 15, 1977, four days after the search and two days before the complaint was issued, three Green Bay detectives brought the suspect, Donald Benoit, from the county jail where he was awaiting trial on other charges to an interview room and questioned him concerning the Stop-N-Go robbery. The State notified the defendant that it intended to use at trial the following four oral statements made by the defendant during that interrogation:

(1) Detective Hinz stated "You know you weren't wearing a mask," to which Benoit responded "I know."
(2) Benoit told Detective Hinz that, whether or not he admitted the robbery, "I'll probably get hung with it anyhow."
(3) To explain why he would not sign a written statement, Benoit stated he would receive five years in the Reformatory, so he would rather not take a chance on that and leave the chips fall where they may.

(4) When Benoit was asked what he was doing on the evening of the Stop-N-Go robbery, Benoit said that on January 25, 1977, he was "with his brother . . . and Little Bruiser." All of these events, including the specific date January 25, 1977, were related by the defendant before the detectives mentioned the exact date of the Stop-N-Go robbery.

At the *Goodchild* hearing held to determine the voluntariness of these statements, Sgt. Thomas J. Hinz, one of the detectives who questioned Mr. Benoit, testified to the circumstances under which each of these four statements were made. During Sgt. Hinz's testimony, Judge Byers commented that the oral statements at issue were not "statements against interest" because they did not admit presence at the scene of the crime. Defense counsel promptly asked the court to rule that the four statements were not incriminatory and therefore could not be used against Mr. Benoit at trial. Judge Byers granted this motion. His reasoning was as follows:

"Unless there is something more I think I'm going to have to [suppress these statements] because if someone said something to me, you weren't wearing a mask I would say no because I wasn't there. There are all sorts of reasons for saying no. . . . [W]hat we're talking about is statements against interest and not inferences that may be drawn from such statements, and there is no statement here, and I think that the potential for error in this case is extremely great, and, well, unless the State has something further I think I'm going to rule that there is no statement against interest here at all because I don't think the mask is a statement against interest. It created a strong suspicion by the officer and would create a strong suspicion by all of us, but there has to be more than a suspicion or an inference."

Judge Byers was in error when he suppressed the defendant's statements on the grounds they were not

against interest. Under sec. 908.01(4)(b)1, Stats., out-of-court statements by a party are admissible against him at trial whether or not they are "against interest." Sec. 908.01(4)(b)1 declares that any prior out-of-court statements of a party are not hearsay, and therefore such statements are admissible if otherwise relevant and not prejudicial in the trial context.[3] In *State v. Lenarchick*, 74 Wis.2d 425, 429, n. 1, 247 N.W.2d 80 (1976), counsel called a statement admitting the commission of a crime an "admission against penal interest." The court held:

> "We believe that terminology is appropriate only where the statement or admission of third party is sought to be introduced in exculpation of the defendant. Here the statement of Lenarchick is simply an 'admission' admissible under an exception to the hearsay rule."

Thus Judge Byers erred in suppressing the oral statements as hearsay that did not fit the "prior statements by a party" rule, sec. 908.01(4)(b)1, Stats., because they were not "against interest." These statements fit this rule.

The trial court should not have reached the issue of whether the statements were probative of guilt at this stage of the prosecution. When the defendant challenges the voluntariness of a confession or an admission, the

---

[3] The Judicial Council Committee's Note explaining the operation of this rule makes it obvious that an "against interest" requirement is not an element of this rule: "A type of evidence with which admissions may be confused is evidence of Declarations against Interest. Such declarations, coming in under a separate exception to the hearsay rule, to be admissible must have been against the declarant's interest when made. No such requirement applies to admissions . . . Of course, most admissions are actually against interest when made, but there is no such requirement. Hence the common phrase in judicial opinions, 'admissions against interest' is an invitation to confuse two separate exceptions to the hearsay rule." 40L Wis. Stats. Ann. at 437 (1975), *quoting:* McCormick, sec. 240.

court must conduct a hearing to determine beyond a reasonable doubt whether the confession or admission is voluntary. *State ex rel. Goodchild v. Burke,* 27 Wis.2d 244, 133 N.W.2d 753 (1965). *See also* sec. 971.31(3), Stats., which provides that "The admissibility of *any statement* of the defendant shall be determined at the trial by the court . . . *unless* the defendant by motion, challenges the admissibility of such statements before trial" (emphasis added). At a *Goodchild* hearing the *sole* issue is the voluntariness of the statements. *Norwood v. State,* 74 Wis.2d 343, 362, 246 N.W.2d 801 (1976). The question of voluntariness is not directed to the trustworthiness or truth of the statement but rather whether the statement was obtained under such circumstances that it represents the uncoerced, free will of the declarant or whether the circumstances deprived him of the ability to make a rational choice. *Roney v. State,* 44 Wis.2d 522, 171 N.W.2d 400 (1969). The defendant is permitted to testify for the limited purpose of showing the circumstances under which the statements were obtained. *State ex rel. Goodchild, supra* at 265. The very purpose for determining voluntariness at a *Goodchild* hearing separate from the trial in chief is to face "the issue [of voluntariness] squarely, in illuminating isolation and unbeclouded by other issues and the effect of extraneous but prejudicial evidence." *Jackson v. Denno,* 378 U.S. 368, 386 (1964), quoted in *State ex rel. Goodchild v. Burke, supra* at 261.

Judge Byers was not entitled to suppress these statements for lack of incriminatory or probative value. Precisely because sec. 908.01(4)(b)1, Stats., makes any prior out-of-court statements of the defendant admissible at trial, the State must inform the defendant before trial of which statements it plans to use. Sec. 971.23(1), Stats. Under sec. 971.31(3), Stats., the defendant, upon

motion, may obtain a determination of the voluntariness of each statement, since the sixth amendment protects him against involuntary incrimination by statements which merely strengthen the State's case. Judge Byers stated that at least some of the four oral statements were "tidbits" that "strengthened the State's case" and created a "strong suspicion" of guilt. Whether in the context of the evidence actually adduced at trial all of these four statements will be sufficiently relevant and nonprejudicial to be admitted is not a question properly resolved at a *Goodchild* hearing. It is clear that Judge Byers' decision to weigh the incriminatory effect of the statements that were the subject of the *Goodchild* hearing and to suppress them because they were not against interest was improper.

The defendant also argues that, if his oral statements are not to be suppressed because they are not against interest, they should be suppressed because they were obtained by the police merely to sew up the case in violation of the defendant's right to due process of law. Since the trial court suppressed the statements on other grounds, the trial court did not reach this issue.

The defendant's claim that the statements were part of an attempt to obtain an illegal sew-up confession is based on the testimony at the *Goodchild* hearing of one of the interrogating officers who stated that he believed the State had sufficient evidence to charge Mr. Benoit with the armed robbery of the Stop-N-Go even without the statements obtained during the February 15 interrogation. He also admitted he was aware that Mr. Benoit had been questioned earlier about the robbery on February 12.

The suppression of sew-up confessions is based on the rule that a defendant who has not yet been charged may be taken into custody and interrogated only for a period

reasonably necessary for the State to decide whether to release him or to make a formal complaint. A detention for any longer period violates due process and renders any confession obtained during the unreasonable period inadmissible. *Briggs v. State,* 76 Wis.2d 313, 323, 251 N.W.2d 12 (1977); *Klonowski v. State,* 68 Wis.2d 604, 229 N.W.2d 637 (1975); *Phillips v. State,* 29 Wis.2d 521, 534–5, 139 N.W.2d 41 (1966). However, "A confession does not become inadmissible as a 'sew-up' confession merely because the state, prior to the confession, had information sufficient to sustain a charge. The question revolves solely on the point whether the delay was inordinate and the detention illegal." *Briggs v. State, supra* at 324; *Krueger v. State,* 53 Wis.2d 345, 357, 192 N.W.2d 880 (1972).

In this case Mr. Benoit was never arrested for the armed robbery of the Stop-N-Go prior to being charged with that crime. At the time of the February 15 interrogation, he was legally in custody awaiting trial on other charges. The evidence presented at the *Goodchild* hearing shows that Mr. Benoit was detained in the interview room for the February 15 questioning only for as long as necessary to conduct the interrogation. Under these circumstances, where the detention was not illegal and the delay not inordinate, the defendant's claim that the four statements were obtained in an illegal attempt to sew up the case is without merit. Therefore we must set aside the trial court's order suppressing the statements, as well as the evidence produced at the search, and remand the cause for a determination that the defendant's statements were voluntary.

*By the Court.*—Order reversed and cause remanded for further proceedings not inconsistent with this opinion.