STATE of Wisconsin, Plaintiff-Respondent,

v.

John Jay WATKINSON, Defendant-Appellant.†

Court of Appeals

*No. 90-2135-CR. Submitted on briefs February 5, 1991.—Decided March 19, 1991.*

(Also reported in 468 N.W.2d 763.)

† Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mark Lukoff,* first assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Donald J. Hanaway,* attorney

general, and *Stephen W. Kleinmaier,* assistant attorney general.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J.   John Jay Watkinson appeals from judgments, entered on guilty pleas, convicting him of possessing cocaine with intent to deliver, in violation of section 161.41(1m)(c)1, Stats., and possessing marijuana, in violation of section 161.41(3r), Stats.[1] The cocaine and marijuana were discovered in Watkinson's home during a search conducted pursuant to a "no knock" search warrant issued by a circuit court judge. The sole issue on appeal is whether the affidavit in support of the search warrant established probable cause for the judge to permit the entry into Watkinson's home to be made without the officers first announcing their presence and purpose, and then allowing time for the door to the home to be voluntarily opened. We conclude that it did, and, accordingly, we affirm.

On December 19, 1988, a "no knock" search warrant was issued for the first floor unit of a two-family building on North Jefferson Street in the city of Milwaukee. The warrant described the unit as being occupied by Watkinson and authorized a search for cocaine, drug paraphernalia, items indicating the identity of those in control of the premises, as well as money and other fruits of criminal activity. The affidavit submitted to the judge by a detective with the Milwaukee police department in support of the search-warrant request related that a confidential informant had made a "controlled buy" from Watkinson at the first floor unit within the previous seventy-two hours and that Watkinson had told the con-

---

[1]This appeal is pursuant to section 971.31(10), Stats., which permits appellate review of orders denying motions to suppress evidence even though the defendant has pled guilty.

fidential informant that he could return to purchase additional cocaine, as represented by the affidavit, "anytime in the future." The affidavit also requested that the search warrant authorize a "no knock" entry "for the protection of officers during the execution of the search warrant" because the informant told the police officers involved "that the subject known as John J. Watkinson has a .38 Cal. revolver in his residence."

The Fourth Amendment's proscription against unreasonable searches and seizures not only mandates that there be probable cause to conduct the search or make the seizure but also that the search or seizure be done in a reasonable manner. *Tennessee v. Garner,* 471 U.S. 1, 7–8 (1985); *Gouled v. United States,* 255 U.S. 298, 305–306 (1921), *overruled on other grounds, Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 300–310 (1967). Thus, absent exigent circumstances, law enforcement officers executing a search warrant must first announce their presence and purpose and then give those within the premises to be searched sufficient time to voluntarily permit the officers to enter. *See Ker v. California,* 374 U.S. 23, 38–41, 46–53 (1963) (entry to arrest) (opinion by Clark, J., on behalf of four members of the Court; opinion by Brennan, J., on behalf of four members of the Court); *State v. Cleveland,* 118 Wis. 2d 615, 623–624, 348 N.W.2d 512, 517 (1984). Pre-entry announcement is not required, however, where there is "a reasonable belief that announcement of police presence would endanger the safety of the police or others, or a reasonable belief that unannounced entry is required to prevent the destruction of evidence." *Cleveland,* 118 Wis. 2d at 624, 348 N.W.2d at 517; *see also* section 968.14, Stats. ("All necessary force may be used to execute a search warrant or to effect any entry into any

building or property or part thereof to execute a search warrant.").

Although the procedure is not specifically authorized by statute, the search warrant may authorize a "no knock" entry if the magistrate finds that is justified by "particular grounds in the given case." *Cleveland,* 118 Wis. 2d at 626–628, 348 N.W.2d at 518–519.[2] In *Cleveland,* a "no knock" entry was sought to prevent the destruction of the drugs that were the object of the search. *Id.,* 118 Wis. 2d at 620, 348 N.W.2d at 515. There was no showing, however, "that made it reasonable to believe that the drugs would be destroyed unless the entry was unannounced" other than the general averment that the suspect was selling drugs. *Id.,* 118 Wis. 2d at 630, 348 N.W.2d at 520. *Cleveland* held this was insufficient to justify an unannounced entry. *Ibid.*

Although the affidavit in support of the "no knock" warrant in *Cleveland* did not assert that the officers believed they would be at risk if they were forced to first announce their presence and purpose, the state subsequently sought to justify the "no knock" entry on that ground. The state argued that the officers were at risk because, as phrased by the court, "drug dealers are often armed." *Id.,* 118 Wis. 2d at 631 n.16, 348 N.W.2d at 521

---

[2]Even though the search warrant authorizes it, the officers may not make a "no knock" entry if there is a change in circumstances so that such an entry is unreasonable at the time of the search. *Cleveland,* 118 Wis. 2d at 627, 348 N.W.2d at 519. By the same token, law enforcement officers may make a "no knock" entry if that is justified at the time of the search even though they did not seek that authority when they applied for the warrant or, if they did seek such authority, their request was rejected. *Id.,* 118 Wis. 2d at 630, 348 N.W.2d at 520.

n.16. *Cleveland* rejected this additional, *post hoc,* argument as well.

> The fact that a person is a member of a class of persons more likely to resist search is not sufficient to justify unannounced entry. The officer must have knowledge of specific facts that indicate that this particular person will conduct himself or herself in this manner when confronted by police. In this case, however, there was no information that the defendant was armed or had taken other security precautions.

*Ibid.* We must analyze the sufficiency of the affidavit here against this background. As with the determination of whether there is probable cause to issue a search warrant, we give " 'great deference' " to the decision of the issuing magistrate as to whether the warrant should have a "no knock" provision. *See Illinois v. Gates,* 462 U.S. 213, 236 (1983) ("[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' ") (quoting *Spinelli v. United States,* 393 U.S. 410, 419 (1969)). Thus, "[i]f the matter is close, we must give the magistrate the benefit of the doubt and sustain the search." *See State v. Bruckner,* 151 Wis. 2d 833, 862, 447 N.W.2d 376, 388 (Ct. App. 1989).[3]

The judge who issued the search warrant in this case was presented with more than a generalized obser-

---

[3] As already noted, a change in circumstances that is known by the officers executing the search warrant may make a "no knock" entry unreasonable even though it is authorized by the search warrant. *See supra* note 2. No change of circumstances is alleged here.

vation that drug dealers are often armed. Rather, he was specifically told that the confidential informant, who had recently purchased cocaine from Watkinson and who was assured by Watkinson that more was available, reported that Watkinson had "a .38 Cal. revolver in his residence." Watkinson argues that this is not enough. He contends that we should adopt the rationale of *People v. Dumas,* 512 P.2d 1208 (Cal. 1973), which requires that even where law enforcement officers know that the suspect has a firearm, the officers must also "reasonably believe the weapon will be used against them if they proceed with the ordinary announcements." *Id.,* 512 P.2d at 1213. We decline to engraft *Dumas* onto the law of this state.[4]

---

[4]*Cleveland* cites *Dumas* for no more than the proposition that "there may be occasions in which facts justifying an unannounced entry would be known at the time the warrant is sought." *Cleveland,* 118 Wis. 2d at 626 & n.11, 348 N.W.2d at 518 & n.11.

Watkinson calls the *Dumas* prerequisites to a "no knock" entry the "majority rule," but he cites only three cases in support of that proposition: *State v. Piller,* 628 P.2d 976, 979 (Ariz. Ct. App. 1981) (citing *Dumas); State v. Jeter,* 634 P.2d 312, 314 (Wash. Ct. App. 1981) (imposing requirement that the suspect have "a known propensity to use the gun in resistance"— *Dumas* not cited); and *Tatman v. State,* 320 A.2d 750, 751 (Del. 1974) ("an unsupported assertion of 'fear that the defendant might have a weapon' " insufficient foundation to support a good faith belief that a "no knock" entry was necessary—*Dumas* not cited). Additionally, aside from California, courts of only two other jurisdictions have discussed *Dumas'* analysis of the prerequisites to a "no knock" entry when law enforcement officers fear for their safety based on information about a suspect's involvement with weapons, Illinois and the District of Columbia; *People v. Ouellette,* 401 N.E.2d 507, 511 (Ill. 1979) (following *Dumas'* analysis); *People v. Trask,* 521 N.E.2d 1222, 1229–1230 (Ill. Ct. App. 1988) (citing

*Dumas* requires an unreasonable certainty of danger and puts law enforcement officers executing search warrants at undue risk. As explained by the dissenting judge in *State v. Jeter,* 634 P.2d 312 (Wash. Ct. App. 1981), requiring law enforcement officers to first know that the suspect has a "propensity to use the gun in resistance" before permitting a "no knock" entry, as imposed by the *Jeter* majority, *id.,* 634 P.2d at 314, "asks too much of the officer" and could subject him to " 'palpable peril.' " *Id.,* 634 P.2d at 315 (Reed, C.J., dissenting) (quoting *State v. Wilson,* 515 P.2d 832, 837 (Wash. Ct. App. 1973), which in turn quoted *Gilbert v. United States,* 366 F.2d 923, 932 (9th Cir. 1966)). We agree. Here, the police officers' knowledge that Watkinson, a drug dealer with an ongoing business, was armed with a ".38 Cal. revolver in his residence" satisfied *Cleveland*'s requirement that there be "particular grounds" or "special circumstances" to support "a reasonable belief that announcement of police presence would endanger the safety of the police or others." *See Cleveland,* 118 Wis. 2d at 624–631, 348 N.W.2d at 517–521. Accordingly, the issuing-magistrate's determination to authorize a "no knock" entry of Watkinson's residence was not unreasonable. We affirm.

*By the Court.*—Judgments affirmed.

*Ouellette* and *Dumas*); *People v. Marinez,* 513 N.E.2d 607, 609–610 (Ill. Ct. App. 1987) (applying *Ouellette* and *Dumas*), *cert. denied,* 488 U.S. 868; and *Williams v. United States,* 576 A.2d 700, 705–707 (D.C. 1990) (upholding entry as proper under the *Dumas* rationale).