STATE of Wisconsin, Plaintiff-Respondent,

v.

James W. KERR, Defendant-Appellant.†

Court of Appeals

*No. 92–1859–CR.  Oral argument January 14, 1993.—Decided January 26, 1993.*

(Also reported in 496 N.W.2d 742).

†Petition to review granted.

On behalf of defendant-appellant, the cause was submitted on the briefs of and orally argued by *Jack E. Schairer,* assistant state public defender, of Madison.

On behalf of plaintiff-respondent, the cause was submitted on the brief of and orally argued by *Gregory Posner-Weber,* assistant attorney general, of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.  James Kerr appeals his convictions for possession of heroin with intent to deliver contrary to sec. 161.41(1m)(a) and (d)2, Stats., obstructing an officer contrary to sec. 946.41(1), Stats., and denial of his motions to suppress evidence. Kerr argues that the search warrant for his motel room was unsupported by probable cause and the officers' no-knock entry was in violation of the rule of announcement. We conclude that probable cause existed and that exigent circumstances justified a no-knock entry. We therefore affirm.

The undisputed facts are as follows: A Brown County narcotics officer requested a search warrant to search a motel room rented in the name of "James Erickson" (hereafter, Kerr).[1] The affidavit in support of the warrant disclosed that a named juvenile informant, who was the motel's desk clerk, observed Kerr check into the motel in the company of another male. The clerk noticed that Kerr was wearing a tweed coat and that there was a bulge in his coat running vertically under his armpit. Because the clerk's father was a police officer and he had observed his father wearing a handgun in a shoulder holster many times in the past, he was convinced that Kerr was concealing a handgun under the coat. The clerk stated that Kerr behaved suspiciously, expressing no interest in the features of the motel or its prices. Kerr told the clerk that he was from Seattle, Washington, and that he would pay for two nights. He paid the clerk $145 in cash, using $20 bills from a one-and-one-half-inch-thick stack of currency. Kerr and his companion were carrying a small metal briefcase and a larger luggage-size metal case. Kerr declined an offer of help to carry his luggage. The clerk's observations were confirmed by another named informant.[2]

The officer traced the license plate number given the motel clerk by Kerr's companion to Charles P. Hodge. Another named narcotics officer had tried to purchase cocaine from Hodge in 1990. Hodge, born in Washington, had stated to the officer that "he gets really good cocaine and heroin from the State of Washington,"

[1] The police later learned that "James Erickson" was Kerr's alias used to register at the hotel.

[2] The fact that an informant is named and not anonymous, and that his information is corroborated, are factors that weigh in favor of a finding of probable cause. *See Draper v. United States*, 358 U.S. 307 (1960).

and that Hodge was driving the same vehicle now registered at the motel. The officer also knew that Hodge was arrested in 1990 for delivery of controlled substances.

The officer indicated that he had received training from the U.S. Drug Enforcement Administration, the Wisconsin Department of Justice and the FBI; that he had received training with U.S. Airport Details for purposes of airport interdiction; and that based upon his training and experience, Kerr demonstrated several indices and characteristics of a drug trafficker. Among these characteristics were Kerr's use of cash to pay for airline tickets and the motel, without prior reservations, and imprecise departure plans; possession of large amounts of currency; the use of metal suitcases to attempt to avoid controlled substance detection; and the apparent possession of a firearm.

When executing the warrant, the police did not announce their entry and used a ram to break down the door. The police seized heroin, syringes, other drug paraphernalia and Kerr's wallet containing over $5,600, but no gun.

A search warrant may only issue on the basis of a finding of probable cause by a "neutral and detached magistrate." *State v. DeSmidt*, 155 Wis. 2d 119, 131, 454 N.W.2d 780, 785 (1990). Whether probable cause exists is to be determined by the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "We accord great deference to the warrant-issuing judge's determination of probable cause, and that determination will stand unless the defendant establishes that the facts are clearly insufficient to support a finding of probable cause." *State v. Higginbotham*, 162 Wis. 2d 978, 989, 471 N.W.2d 24, 29 (1991).

■

We conclude that the totality of the circumstances as outlined permitted the magistrate to conclude that probable cause existed for the crimes of possession of controlled substances and carrying a concealed weapon. Although there was no direct evidence of Kerr's drug possession and no single circumstance that alone would justify the warrant, there was extensive circumstantial evidence that, taken together, justified a finding of probable cause. Kerr was in the company of a person with an arrest record for drug dealing and recent drug related ties to the state of Washington, Kerr's place of origin. He appeared to be armed and carrying a large amount of cash. Kerr's behavior and appearance caused a named citizen informant and a corroborating citizen to be articulably suspicious. Moreover, when an average citizen gives information to the police, the police should be permitted to assume they are dealing with a credible person absent any special circumstances suggesting otherwise. *United States v. Phillips*, 727 F.2d 392, 397 (5th Cir. 1984).

Kerr contends that the claim of drug possession was based on an unspecified drug profile and that such conduct as carrying one's own bag, paying cash and lacking interest in motel services is not necessarily indicative of a person in possession of drugs. Kerr cites *United States v. Hall*, 978 F.2d 616 (10th Cir. 1992), in support of his argument.

■

In *Hall*, the police seized the luggage of a passenger traveling on a train because the person appeared nervous, had paid cash for a one-way ticket, was traveling alone in a private compartment and was carrying a very heavy suitcase. The court held that police lacked reasonable suspicion to seize the luggage. The case presented

here, however, is markedly stronger. In addition, the police did not rely solely on a "profile" to justify the warrant. Therefore, we conclude that the totality of the circumstances establishes that there was probable cause to issue the warrant.

Next, Kerr argues that the evidence should be suppressed because the police failed to comply with the knock and announce rule. Kerr argues that because the police believed they possessed sufficient evidence to justify a no-knock entry when applying for the search warrant and failed to request authorization for it, the evidence should be suppressed.

It is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by a warrant, subject of course to the general fourth amendment protection "against unreasonable search and seizures." *Dalia v. United States*, 441 U.S. 238, 257 (1979). Our supreme court has stated in *State v. Williams*, 168 Wis. 2d 970, 986, 485 N.W.2d 42, 48 (1992), that whenever the police officers at the time of the application for a search warrant possess sufficient information that justifies dispensing with the announcement rule, they should present such information to a judge for the determination whether to authorize the no-knock entry by police. The *Williams* case, however, concluded that the officers reasonably believed they had no-knock authorization from the magistrate because they had asked for it and it was not denied. Thus, that case is not squarely on point on the issue of failing to seek no-knock authorization.[3]

---

[3] The prevailing view, not followed in Wisconsin, is that even though a no-knock entry is permissible under exigent circumstances, a magistrate may not authorize advance noncompliance with the rule, unless allowed by legislation, because the exceptions

■

The court on another occasion has stated that the justification for dispensing with the announcement requirement must be judged as of the time the warrant is executed. *State v. Cleveland*, 118 Wis. 2d 615, 630, 348 N.W.2d 512, 520 (1984). Even if the police have no reason to seek advance authorization for a no-knock entry, have failed to seek advance authorization or if advance authorization was denied, they may still make a no-knock entry if facts existing at the time of entry give them reasonable cause to believe that a no-knock entry is necessary to execute the warrant safely or successfully. *Id.* We conclude that compliance with the rule of announcement must be determined at the time of execution, and that while advance request is certainly preferable, if the police have grounds at the time of entry, failure to seek advance authorization is not fatal.[4]

■

Finally, Kerr argues that the motion to suppress should have been granted because no exigent circumstances existed justifying noncompliance with the rule of announcement. We conclude that there was probable cause to believe Kerr was armed. In reviewing a denial of suppression motion, we will uphold the trial court's findings of fact unless they are clearly erroneous. *Id.* at 630,

---

to the rule pertain only to emergency situations at the time of entry. *Parsley v. Superior Court*, 513 P.2d 614 (Cal. 1973); 2 WAYNE R. LaFAVE, SEARCH & SEIZURE, A TREATISE ON THE FOURTH AMENDMENT § 4.8(g) (2d ed. 1991).

[4] We also note that there is also a practical reason for law enforcement officials to obtain advance authorization for a no-knock entry. A no-knock warrant, like other decisions of the magistrate, are reviewed with great deference. *See State v. Watkinson*, 161 Wis. 2d 750, 755, 468 N.W.2d 763, 765 (Ct. App. 1991).

348 N.W.2d at 520. Whether those facts satisfy the constitutional requirement of reasonableness presents a question of law, and therefore we are not bound by the trial court's decisions on that issue. *State v. Jackson*, 147 Wis. 2d 824, 829, 434 N.W.2d 386, 388 (1989).

The fourth amendment proscription against unreasonable searches and seizures requires that the search or seizure be conducted in a reasonable manner. *Williams*, 168 Wis. 2d at 981, 485 N.W.2d at 46. "The rule of announcement, which requires police officers seeking to enter a dwelling in execution of a search warrant to announce their identity and allow time for the door to be opened voluntarily, addressed the manner in which a legitimate governmental intrusion is to take place." *Id.* "While the United States Supreme Court has not yet detailed the minimum constitutional requirements for the manner in which a search warrant is executed, it is generally recognized that the knock and announce rule may be excused only if 'exigent circumstances' exist to justify the no-knock entry." *Id.* at 982, 485 N.W.2d at 46. "Exigent circumstances 'include a reasonable belief that announcement of police presence would endanger the safety of the police or others, or a reasonable belief that unannounced entry is required to prevent destruction of evidence.' " *Id.* (quoting *Cleveland*, 118 Wis. 2d at 624, 348 N.W.2d at 517).

*Cleveland* rejected a blanket approach in narcotics cases that the nature of the evidence itself, without more, permits an unannounced entry. *Id.* at 628, 348 N.W.2d at 519. The court also rejected the argument that because drug dealers are often armed, a no-knock entry is justified. *Id.* at 631 n.16, 348 N.W.2d at 521 n.16. In *Watkinson*, 161 Wis. 2d at 757, 468 N.W.2d at 766, we stated that knowledge that the defendant was a

64

drug dealer and armed was sufficient to establish exigent circumstances. In  *Williams*, the court noted that the violence associated with drug trafficking today places law enforcement officers in extreme danger, to which Wisconsin is not immune. *Id.*  at 984-85, 485 N.W.2d at 47.

Here, there was evidence that Kerr was carrying a concealed weapon and was involved in drug trafficking. Because the officers could reasonably conclude that their safety was threatened under these circumstances, we conclude that exigent circumstances existed.

*By the Court.*—Judgment affirmed.