STATE of Wisconsin, Plaintiff-Respondent,

v.

James W. KERR, Defendant-Appellant-Petitioner.

Supreme Court

*No. 92–1859–CR. Oral argument October 13, 1993.—Decided February 8, 1994.*

(Also reported in 511 N.W.2d 586.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Jack E. Schairer,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Gregory M. Posner-Weber,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

Amicus curiae brief was filed by *Michael J. Fitzgerald* and *Coffey, Coffey & Geraghty,* Milwaukee, for the American Civil Liberties Union of Wisconsin Foundation.

SHIRLEY S. ABRAHAMSON, J.   This is a review of a published decision of the court of appeals, *State v. Kerr,* 174 Wis. 2d 55, 496 N.W. 2d 742 (Ct. App. 1993), affirming the judgment of conviction of the circuit court for Brown county, Peter J. Naze, Circuit Judge.

Two issues are raised on review: (1) Is the warrant to search for drugs in the defendant's motel room supported by probable cause? (2) In executing the warrant to search for drugs were the police justified in making a "no-knock" entry of a motel room. In other words, may law enforcement officers with a warrant to search for drugs enter a motel room without first announcing their presence (identity) and purpose and allowing time for the door to be opened?

We hold that probable cause for the issuance of the search warrant existed. We also conclude, based on our holding in *State v. Stevens,* 181 Wis. 2d 410, 511 N.W.2d 591 (1994) that the no-knock entry was valid. Accordingly we affirm the decision of the court of appeals.

375

The facts relevant to the issues before this court are not in dispute. On October 20, 1991, Jon Spallees, a narcotics officer with the Brown County Multi-Jurisdictional Unit, requested and obtained a search warrant to search a motel room rented in the name of "James Erickson." The police later learned that "James Erickson" was the alias that defendant James W. Kerr had used to register at the motel.

The affidavit in support of the warrant disclosed that a named juvenile informant, E.J.S., who was desk clerk at the motel, observed the defendant check into the motel in the company of another male. The clerk further observed a bulge running vertically under the armpit of a tweed coat the defendant was wearing. Because he had observed his father, a police officer, wearing a handgun in a shoulder holster many times in the past, the clerk was convinced that the bulge in the defendant's overcoat concealed a handgun.

According to the clerk, the defendant behaved suspiciously, expressing no interest in the features of the motel or its prices. The defendant told the clerk that he was from Seattle, Washington, and that he would pay for two nights and might stay for up to four nights. He then paid the clerk $145 in cash, using $20 bills from a one-and-a-half-inch-thick stack of currency. The defendant declined an offer of help to carry his luggage which consisted of a small metal briefcase and a larger luggage-size metal case. Another employee at the motel confirmed the clerk's observations. Nothing in the search warrant indicates that the police had worked with the juvenile or the other motel employee previously.

The defendant's companion gave a license plate number to the clerk. Upon tracing the number, the police found that the truck was registered to Charles P.

Hodge. Another narcotics officer, Officer Bennie, recognized Hodge's name; in 1990, about a year before this incident, Officer Bennie had tried unsuccessfully to purchase cocaine from Hodge during an undercover investigation. He recalled that Hodge had told him that he got "really good cocaine and heroin from the State of Washington." Officer Bennie also knew that Hodge had been arrested in 1990 for delivery of controlled substances, although he did not know whether Hodge had a conviction record.

In applying for the search warrant, officer Spallees advised the commissioner that he had received training from the U.S. Drug Enforcement Administration, the Wisconsin Department of Justice and the FBI; that he had received training with U.S. Airport Details for purposes of airport interdiction; and that based on this training and experience, the defendant's conduct appeared to fit the profile of a drug trafficker. The defendant's conduct included: (1) use of cash to pay for airline tickets[1] and for the motel room; (2) failure to make prior reservations or specify a departure date; (3) possession of large amounts of cash; (4) use of metal suitcases which traffickers seem to believe can evade detection of controlled substances; and (5) suspected possession of a concealed firearm.

The officer did not request, nor did the search warrant authorize, a no-knock entry. When executing the warrant on October 21, 1991, the police did not announce their entry and used a ram to break down the door. Heroin, syringes, other drug paraphernalia, and the defendant's wallet containing over $5,600 were seized. No gun was found.

---

[1] Police investigation revealed that the defendant had paid cash for a one-way ticket from Seattle to Green Bay.

Prior to trial, the defendant moved to suppress the evidence seized under the search warrant, arguing that the search warrant was unsupported by probable cause and that the officers' no-knock entry was in violation of the rule of announcement. The circuit court denied the motion. The defendant was convicted of possession of heroin with intent to deliver contrary to sec. 161.41(1m)(a) and (d)2, Stats. 1991–92. The court of appeals affirmed the judgment of conviction, concluding (1) that the totality of the circumstances supported a finding of probable cause and (2) that exigent circumstances justified the no-knock entry.

The first issue we address is whether probable cause for the issuance of the search warrant existed. In making this determination, we are confined to the record that was before the warrant-issuing commissioner. *State v. DeSmidt,* 155 Wis. 2d 119, 132, 454 N.W.2d 780 (1990). The duty of the reviewing court is to ensure that the warrant-issuing commissioner had a substantial basis for concluding that probable cause existed. *Illinois v. Gates,* 462 U.S. 213, 238–39 (1982). A court must determine whether the commissioner who issued the warrant was "apprised of sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that they will be found in the place to be searched." *State v. Starke,* 81 Wis. 2d 399, 408, 260 N.W.2d 739 (1978). *See also State v. Benoit,* 83 Wis. 2d 389, 395, 265 N.W.2d 298 (1978). The warrant-issuing commissioner's determination of probable cause cannot be upheld, however, if the affidavit provides nothing more than the legal conclusions of the affiant. *State v. Higginbotham,* 162 Wis. 2d 978, 992, 471 N.W.2d 24 (1991).

■

The evidence necessary to establish probable cause to issue a search warrant is less than that required to support a bindover following a preliminary examination. *State v. Benoit,* 83 Wis. 2d 389, 394, 265 N.W.2d 298 (1978). "Probable cause is not a technical, legalistic concept but a flexible, common-sense measure of the plausibility of particular conclusions about human behavior." *State v. Petrone,* 161 Wis. 2d 530, 547–548, 468 N.W.2d 676 (1991).

The task of the warrant-issuing commissioner "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . ., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1982).

■

Great deference should be given to the warrant-issuing commissioner's determination of probable cause. *State v. DeSmidt,* 155 Wis. 2d 119, 132, 454 N.W.2d 780 (1990) (citing *Illinois v. Gates,* 462 U.S. 213, 236 (1983), and *United States v. Leon,* 468 U.S. 897, 914 (1984)); *State v. Hanson,* 163 Wis. 2d 420, 422–423, 471 N.W.2d 301 (Ct. App. 1991). The deferential standard of review is " 'appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.' " *State v. DeSmidt,* 155 Wis. 2d 119, 133, 454 N.W.2d 780 (1990), (quoting *Massachusetts v. Upton,* 466 U.S. 727, 733 (1983)).[2]

---

[2] By interposing the "orderly procedure" of applying to a commissioner for a warrant, an opportunity is presented to prevent unjustified intrusions by law enforcement officers "before a deprivation of personal liberty occurs." 1 LaFave,

The affidavit supporting the search warrant in this case contains a minimal factual basis to support probable cause. However, according great deference to the warrant-issuing commissioner's decision, we agree with the court of appeals' analysis of the probable cause issue in this case under the standard of review the court has set forth. As the court of appeals stated: "Whether probable cause exists is to be determined by analyzing the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 238 (1982). 'We accord great deference to the warrant-issuing judge's determination of probable cause, and that determination will stand unless the defendant establishes that the facts are clearly insufficient to support a finding of probable cause.' *State v. Higginbotham,* 162 Wis. 2d 978, 989, 471 N.W.2d 24, 29 (1991). We conclude that the totality of the circumstances [in this case] . . . permitted the [warrant-issuing judge] to conclude that probable cause existed for the crimes of possession of controlled substances and carrying a concealed weapon. Although there was no direct evidence of [the defendant's] drug possession and no single circumstance that alone would justify the warrant, there was extensive circumstantial evidence that, taken together, justified a finding of probable cause." *State v. Kerr,* 174 Wis. 2d 55, 60–61, 496 N.W.2d 742 (Ct. App. 1993).

---

*Search and Seizure* 549 (1987) (citations omitted). Warrants are also preferred because a "warrant assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *United States v. Chadwick,* 433 U.S. 1, 9 (1977) (overruled on other grounds, *California v. Acevedo,* 500 U.S. 565 (1991)).

In examining whether probable cause existed, we first consider the "veracity" and "basis of knowledge" of persons supplying the hearsay information. " '[W]hen an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case.' " *United States v. Phillips,* 727 F.2d 392, 397 (5th Cir. 1984) (quoting 1 W. LaFave, *Search & Seizure* § 3.4(a), at 592 (1978)). *See also State ex rel. Sieloff v. Golz,* 80 Wis. 2d 225, 258 N.W.2d 700 (1977); *State v. Paszek,* 50 Wis. 2d 619, 630–31, 184 N.W.2d 836 (1971). In this case, we have observations made by the motel clerk, E.J.S., the 17-year-old son of a police officer. The clerk believed that the defendant was concealing a gun in his overcoat. His observations of his father's carrying a concealed weapon formed the basis for E.J.S.'s opinion. The warrant-issuing commissioner could reasonably conclude that E.J.S. was credible because he was a citizen informant who had experience with concealed weapons, and no information suggested he was not credible.

Next we look at the circumstantial evidence, which in this case is a series of observations, none of which, taken individually, would be sufficient to justify a search warrant. In several respects, the defendant's actions suggested that he met the profile of a drug courier. For example, he was carrying a large amount of cash. He paid cash for his motel room and his airplane ticket from Seattle to Green Bay. He was carrying metal suitcases. These factors in and of themselves might not be sufficient to convince the commissioner that a search warrant was justified.

However, the police were also able to inform the commissioner of observations by a named citizen informant and a corroborating citizen, the other motel employee. The citizen informant described the defendant's behavior and reported that he appeared to have a concealed weapon. Furthermore, the defendant's companion, Charles P. Hodge, had an arrest record for drug dealing and had talked about his drug related ties to the state of Washington, Kerr's place of origin. While Hodge had not sold cocaine to Officer Bennie, he had told the officer that he got really good cocaine and heroin from the State of Washington.

The defendant contends that the claim of drug possession was based on an unspecified drug courier profile and that conduct such as carrying one's own bag, paying cash and lacking interest in motel services does not necessarily indicate possession of drugs. To support his argument, the defendant relies on *Florida v. Royer,* 460 U.S. 491 (1983).[3] In *Royer* the United States Supreme Court concluded that the police did not have probable cause to arrest Royer when their only information was that the arrestee matched a "drug courier profile." The Court stated, "We cannot agree with the State . . . that every nervous young man paying cash for a ticket to New York City under an assumed name and carrying two heavy American Tourister bags may be arrested . . . ." *Id.* at 507.

However, the case presented here is somewhat stronger than the one presented in *Royer.* The police relied not only on the defendant's apparently matching

---

[3] The defendant regards the procedure for determining probable cause for the issuance of a search warrant to be the same as for the issuance of an arrest warrant. *State v. Beal,* 40 Wis. 2d 607, 614, 162 N.W.2d 640 (1968).

a drug trafficker's profile but also on information suggesting that the defendant was carrying a concealed weapon and was accompanied by a person with a record of arrest for drug dealing and with recent drug-related ties to the state from which the defendant had just come. Therefore, according great deference to the warrant-issuing commissioner, we conclude that the totality of the circumstances supports the determination of probable cause.

The second issue we address is whether the no-knock entry was justified under the circumstances of this case. Applying the holding in *State v. Stevens,* 181 Wis. 2d 410, 511 N.W.2d 591, we conclude that the no-knock entry was justified.

For the reasons set forth, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(concurring).* I conclude that the search in this case was constitutional on the basis of the existing law on no-knock entries. At the time the warrant was executed, the officers had reasonable grounds to believe that the defendant, who was suspected of drug trafficking, was carrying a concealed weapon. State's Brief, pp. 20–22. *State v. Watkinson,* 161 Wis. 2d 750, 468 N.W.2d 763 (1991).

As I explained in my concurrence in *State v. Stevens,* 181 Wis. 2d 410, 436, 511 N.W.2d 591, I do not join the majority in abandoning the knock-and-announce rule.

I am authorized to state that CHIEF JUSTICE NATHAN S. HEFFERNAN joins this opinion.