STATE of Wisconsin, Plaintiff-Appellant-Cross-Respondent,†

v.

Woodrow A. DeSMIDT, Defendant-Respondent-Cross-Appellant.

Court of Appeals

No. 88–1356–CR. *Submitted on briefs January 25, 1989.— Decided June 13, 1989.*

(Also reported in 444 N.W.2d 420.)

† Petition to review granted.

For plaintiff-appellant-cross-respondent there were briefs by *Donald J. Hanaway,* attorney general, and *Barry M. Levenson,* assistant attorney general.

For defendant-respondent-cross-appellant there were briefs by *Steven L. Miller* and *Zuidemulder, Gazeley & Appel, S.C.,* of Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. The state appeals an order suppressing as evidence the business records and patient files of Woodrow A. DeSmidt, Jr., a Green Bay dentist, seized pursuant to a search warrant. DeSmidt is charged with nine counts of medical assistance fraud and four counts of insurance fraud.

The principal appeal is authorized by sec. 974.05(1)(d)2, Stats., permitting review of a final order

adverse to the state that suppresses evidence. The circuit court agreed with DeSmidt that the warrant failed to adequately particularize the things subject to seizure, thus delegating a constitutionally unacceptable discretion to the police. DeSmidt argues, alternatively, that if this court concludes that the warrant authorized a seizure of all of his records, then it constitutes a "general warrant" and fails because the affidavit in support lacked probable cause to justify so broad a search. We hold that although the warrant was directed to all of DeSmidt's records and files and delegated no discretion, the supporting affidavit failed to establish a sufficiently pervasive fraudulent scheme so as to justify a comprehensive seizure of all records and files. We therefore affirm the suppression order.

DeSmidt cross-appeals an order allowing the state to substitute a copy of the lost original affidavit and complaint supporting the search warrant. Because the copies were properly authenticated and therefore reconstructed rather than supplemented the original records, we affirm the trial court's ruling on this issue.

We first address DeSmidt's cross-appeal challenging the state's substitution of copies of the lost documents because, if the trial court erred, there is no record on which the state can seek review. After conducting an evidentiary hearing on the issue, the trial court made the following findings:

> This Court is satisfied by evidence beyond a reasonable doubt that the copies of the complaint and affidavit are exact copies . . . and were the basis upon which the warrant was issued. Attorney [General] McConnell testified that the affidavit was prepared by him, and executed . . . by Investigator Isely in his presence . . . that the affidavit itself . . . was Xeroxed . . . that Judge Grant signed a warrant after

reviewing an affidavit, that he notarized Mr. Isely's signature on a complaint, and that those documents were then taken to the Brown County District Attorney's office for Xeroxing. This Court finds it particularly relevant that the copies . . . are not blank copies, but are photocopies of executed documents, including the signatures of Mr. Isely and Judge Grant on the complaint, and Mr. Isely and Mr. McConnell on the affidavit. . . . While this Court will acknowledge that the possibility does exist that the State had the opportunity to substitute the original affidavit with another document subsequent to its review by Judge Grant, this Court is satisfied by evidence beyond a reasonable doubt that that did not occur in this case. That possibility would also exist as it concerns the complaint, although with the caveat that Judge Grant's signature does appear on the proffered copy. This Court is aware of the ability to alter documents by the use of a word processor. However, this Court is again satisfied beyond a reasonable doubt that that was not done . . ..

The defense presented no evidence that would contradict these findings. The trial court's findings of fact will not be upset unless they are against the great weight and clear preponderance of the evidence. *State v. Bembenek,* 111 Wis. 2d 617, 631, 331 N.W.2d 616, 623 (Ct. App. 1983). Section 968.22, Stats., provides: **"Effect of technical irregularities.** No evidence seized under a search warrant shall be suppressed because of technical irregularities not affecting the substantial rights of the defendant." The trial court's order permitting the use of copies is affirmed.

Turning to the state's appeal of the suppression order, we address first whether the warrant delegated

discretion to the police to decide which records it should seize. The warrant provides in relevant part:

> WHEREAS, John P. Isely, Jr., has this day complained . . . that . . ..
>
> . . ..
>
> there are now located and concealed certain things, to wit:
> Patient charts and dental records, recording among other things, services performed, dates of service; X-ray negatives in envelopes attached to the individual patient dental records; business records including but not limited to, appointment book or books, copies of patient statements, receipt book or books, fee schedule, ledgers, daily business summaries, remittance forms; Medicaid provider handbooks.
>
> which things . . ..
>
> . . ..
>
> [ . . . *may constitute evidence of a crime, to wit: medical assistance fraud committed in violation of Section* 49.49(1)(a) . . . *and fraudulent insurance claims in violation of sec.* 943.395 . . ..]
>
> NOW, THEREFORE, . . . you are commanded forthwith to search . . . for said things, and if . . . found,
>
> . . ..
>
> *[to bring the same . . . before the* Circuit *Court . . ..]*

The subordinate clause "which things *may constitute evidence of a crime, to wit: medical assistance fraud . . . and fraudulent insurance claims . . ."* merely expresses the purpose of the search. It is part of the "WHEREAS" clause that precedes the actual order for the search. Contrary to the trial court's holding, the

clause is not a directive to the officer to conduct an on-the-premises quasi-judicial examination of the records to determine their evidentiary value. It is merely part of the formal recitation of the magistrate's findings based upon the complaint and affidavit.

We recognize that almost any directive to seize documents will necessitate a limited discrimination by the police. Obviously records must be summarily reviewed to assure that they fall within the recited description. This is a ministerial task, however, not a discretionary one. That the records "*may constitute evidence of a crime*" was the decision of the magistrate when he issued the warrant and not a judgment of the officer when he executed it. We therefore conclude that the warrant stated authorization for the seizure of all of DeSmidt's records and did not unlawfully delegate discretion to the police.

The more difficult issue is whether the government's affidavit established probable cause to seize all of the business and patient files or whether the magistrate issued a forbidden "general warrant." Because this issue is especially fact-sensitive, we set out the affidavit verbatim in the appendix. DeSmidt does not challenge the reliability of the named informant, Harriet Helene Berger, an employee in his office for ten or eleven weeks during the summer of 1985. Rather, he challenges the sufficiency of her information to support so broad a search. Berger stated that "in her judgment DeSmidt was engaged in a series of illegal activities," and then detailed a description of six specific patients by name or identifying number, date, and fraudulent treatment history. She described those incidents as "common practice," done "routinely," and as "examples," i.e., ones that serve as a pattern. Berger also claimed that comparison of business records of DeSmidt and his partner "would

disclose other instances" of Medicaid and private insurance fraud. She describes a statement by DeSmidt's associate, Dr. McClain, that led Berger to conclude that McClain "was being trained to conduct her business" in a similar fashion. She also reported that DeSmidt "adjusted his fees" when billing some insurance carriers so as to receive his full customary fees even though the insurance covered only a percentage of the billed fees. This allegation thus implicates the files of uninsured patients in order to establish proof of "customary fees."

As the result of the all-encompassing seizure authorized, four agents of the Wisconsin Department of Justice removed twenty-two boxes of materials—over 2,000 patient files, financial records, including all business and accounting files and ledgers, bank statements, appointment books, and payroll check stubs. Agent Isely decided not to seize one file cabinet of "old records" from the 1970's, although he interpreted the warrant to authorize seizure of all records and files. An overbroad warrant is not saved by the exercise of executive discretion in its execution. *United States v. District Court*, 407 U.S. 297, 317 (1972).

The fourth amendment does not deny law enforcement officers the support of the usual inferences that reasonable people draw from evidence, although it requires that such inferences be drawn by a neutral and detached magistrate. *State v. Starke*, 81 Wis. 2d 399, 409, 260 N.W.2d 739, 745 (1978). "Affidavits for search warrants need not be drafted with elaborate specificity, [n]or should a policeman's affidavit 'be judged as an entry in an essay contest.' " *Id.* at 410, 260 N.W.2d at 745 (quoting *United States v. Harris*, 403 U.S. 573, 579 (1971) (citation omitted)). "Recital of some of the underlying circumstances in the affidavit is essential if

331

the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police." *Starke,* 81 Wis. 2d at 410, 260 N.W.2d at 746 (quoting *United States v. Ventresca,* 380 U.S. 102, 108 (1965)). "Because the informed and deliberate determinations of a neutral magistrate are to be preferred over the hurried decisions of arresting officers, 'the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants . . ..' " *Starke,* 81 Wis. 2d at 411, 260 N.W.2d at 746 (quoting *Ventresca,* 380 U.S. at 109).

"Deference to the magistrate, however, is not boundless." *United States v. Leon,* 468 U.S. 897, 914 (1984). Reviewing courts will not defer to a warrant that does not provide the magistrate with a substantial basis for determining the existence of probable cause. *Id.* at 915.

The presence of criminal practices during the summer of 1985 does not give rise to the reasonable inference that DeSmidt was engaged in a lifetime of wrongful conduct. The fourth amendment violation here is not that certain "innocent records" were ordered seized along with those that showed deceit; the violation is the open-ended directive to go backward infinitely based upon three months' activities.

We are not unmindful of the problems presented to law enforcement in this area. The development of copy machines, the growth of white-collar crime, and the accompanying explosion of paper, coupled with the expansion of court authority to seize mere evidence (as distinct from the fruits and instrumentalities of crime) all contribute. *United States v. Abrams,* 615 F.2d 541,

549 (1st Cir. 1980) (Campbell, J., concurring). Nevertheless, the reasonableness requirements of the fourth amendment dictate a less intrusive invasion than was ordered here. Without attempting to set the outside limits of a search warrant under these facts, we conclude that the authority was too broad. The informant in this case made no claim to know the contents of files outside her employment period. *Abrams,* under similar facts, suggests that the search is restricted to the time span of the informant's employment. Even if the fraud is reasonably inferred to precede Berger's employment, there is nothing in the affidavit to suggest it went on for many years.

Finally, the attorney general alternatively urges us to apply the good faith exception to the exclusionary rule created by the United States Supreme Court in *Leon.* We decline the state's invitation. The exclusionary rule in Wisconsin is based upon the Wisconsin Constitution, art. I, sec. 11, as interpreted in *Hoyer v. State,* 180 Wis. 407, 193 N.W. 89 (1923). If the exclusionary rule stated in *Hoyer* is to be overruled, that is a function of our supreme court. *See State v. Grawien,* 123 Wis. 2d 428, 432, 367 N.W.2d 816, 818 (Ct. App. 1985). That court has declined to do so at least once since *Leon* was written. *State v. Brady,* 130 Wis. 2d 443, 453-54, 388 N.W.2d 151, 156 (1986).[1]

*By the Court.*—Order affirmed.

---

[1] We do not reach DeSmidt's allegations that the state's misconduct in the execution of the warrant and in its post-seizure conduct also requires suppression of the evidence. DeSmidt claims the seizure of his personal checkbook and bank statements, his home and car payment books, notes pinned on a bulletin board and more. He also claims that almost all records were kept for nearly a year until he got a court order for their return;

## APPENDIX

## AFFIDAVIT

State of Wisconsin ⎫
County of Dane ⎭

John P. Isely, Jr., being duly sworn, states as follows:

1. Affiant is an investigator for the Wisconsin Department of Justice, Medicaid Fraud Control Unit, and in that capacity knows the following. Affiant was assigned to investigate a complaint filed by one Harriet Berger.

2. Harriet Helene Berger was personally interviewed by your affiant on August 26, 1985, in Green Bay, Wisconsin, and by telephone on August 20, 1985, and again on August 28, 1985.

3. Berger stated that she was employed by a Woodrow A. DeSmidt, DDS, at his offices located at 1515 Sixth Street, Green Bay, Wisconsin, for ten or eleven weeks. Her employment was terminated by DeSmidt on or about August 15, 1985.

4. Berger stated that during her employment by DeSmidt, she was responsible for preparing third party payor claim forms including Wisconsin Medicaid claims on behalf of Dr. DeSmidt and his associate, Kelleen McClain, DDS, and had access to the files and records of their patients and to the business records involved with their patient care in the regular course of her duties.

5. Berger stated that in her judgment DeSmidt was engaged in a series of illegal activities. She stated that this belief resulted from a comparison of various

that the court order was violated; and that hundreds of X-rays and records were never returned.

334

records in DeSmidt's office that disclosed claims had been filed with E.D.S.-Federal for services performed on one date when in fact patient records and other documents disclosed that in fact the claimed services had been performed on another date when the Medicaid recipient was not eligible to receive medical assistance.

6. As an example of this kind of false claiming, she cited a claim for services filed with E.D.S.-Federal for payment under Wisconsin's Medical Assistance Program for services allegedly performed for medical assistance recipient, P0398-42-1992A01, of Green Bay, Wisconsin, on June 10, 1985 and June 18, 1985, when the patient's records and the appointment book disclosed that the services were in fact performed on April 10, 1985 and April 25, 1985. The billing of these services as having been done on the later dates was for the reason that the patient was not an eligible recipient on the dates service was actually provided.

7. Your affiant examined the E.D.S.-Federal computer information, which showed that Medicaid recipient P0398-42-1992A01, was not eligible for medical assistance until May 29, 1985.

8. Berger stated that the correct dates for the claimed services would be disclosed by the patient account card and the patient's dental records as being April 10, 1985 and April 25, 1985. She further stated that a remittance and status report for these services would disclose the dates of services as falsely claimed to E.D.S.-Federal, to be June 10, 1985 and June 18, 1985, respectively.

9. Berger further stated that DeSmidt routinely took bitewing x-rays of his patients' teeth. Such x-rays were also routinely billed to E.D.S.-Federal as being periapical x-rays when performed for medical assistance recipients because bitewing x-rays are not covered ser-

335

vices under the Medical Assistance Program without prior authorization.

10. As an example of this common practice of billing bitewing x-rays as being periapical x-rays, Berger cited the April 10, 1985, x-rays billed for P0398-42-1992A01 as having been taken on June 10, 1985. Berger stated the x-rays in the dental file of P0398-42-1992A01 would be seen to be bitewing x-rays, and the envelope in which they are kept in the patient's dental record would identify them as bitewing x-rays as would the entry in this patient's chart. Berger further stated that she had no doubt that DeSmidt knew that bitewing x-rays are services not routinely covered by the Wisconsin Medical Assistance Program because a list of uncovered services was posted at the reception desk in DeSmidt's office.

11. Berger stated that in another case DeSmidt had received prior authorization to perform root canal therapy for patient S0393-82-5322C01. This prior authorization stated in the approval that the authorization expired on April 15, 1984. The dental records of this MA patient will show that the root canal services were in fact performed on May 30, 1984, according to Berger. Affiant examined the corresponding MA claim which stated the service was performed on April 11, 1984.

12. Berger stated other examples of Wisconsin medical assistance claims filed with E.D.S.-Federal which she claimed DeSmidt's business and medical records would disclose as containing false information in order to obtain payment for services which would not be reimbursed by E.D.S.-Federal if the claims were wholly accurate.

13. Your affiant has examined Medical Assistance Program records as to information received from Berger and found that her information concerning MA patients

was correct as to claims filed with E.D.S.-Federal for services allegedly performed by DeSmidt. He further believes that she is correct in stating such claims contain information which is not true.

14. Berger stated that when she confronted DeSmidt with the fact that he was engaging in activities which were illegal he smiled and said that it was his office. Shortly after this confrontation DeSmidt terminated Berger's services.

15. Berger stated that similar practices are being utilized in filing claims with private insurance carriers. She gave several examples of cases where claims were filed with private insurance companies which contained false information as to dates of service. She specifically referred to a patient named Nancy Landin. Berger said that false information was entered on a claim filed with Fireman's Fund Insurance Companies because coverage under the involved policy had ceased at the time the services were in fact provided. Berger stated that examination of DeSmidt's dental records of Nancy Landin as well as the appointment book would in fact disclose that the services claimed to have been provided on May 23, 1985, were in fact provided on June 3, 1985. A similar falsehood was made to this same carrier for services rendered to Jeff Landin on June 13, 1985, under this same policy by claiming such services were performed on May 13, 1985, when the insurance policy was in force. A similarly false claim was filed by DeSmidt on behalf of David Landin.

16. Berger cited as another example of Dr. DeSmidt's willingness to file fraudulent claims, an incident involving a patient by the name of Mike Udell. Udell received certain services on January 29, 1985. On August 6, 1985, Berger received a call from Udell. Udell asked if the services could be billed to his insurance

company under a policy that became effective in March of 1985. Berger stated she communicated the substance of this phone conversation to DeSmidt. She stated DeSmidt instructed her to bill as requested by Udell. Berger stated she told DeSmidt she could not do that.

17. Berger also stated that DeSmidt adjusted his fees for services billed to some insurance carriers so as to receive his full customary fees even though such carriers paid only a percentage of his fees that were billed.

18. Affiant was informed from records maintained by the Wisconsin Department of Health and Social Services of the following information. Woodrow A. DeSmidt, DDS, has been a certified provider in the Wisconsin Medical Assistance Program, otherwise known as Medicaid, since July 1, 1975, and has been assigned MA provider number W78718008 and maintains his offices at 1515 Sixth Street, Green Bay, Wisconsin, 54304, and that Kelleen Y. McClain, DDS, has been a certified provider in the Wisconsin Medical Assistance Program since June 11, 1985, and has been assigned MA provider number E27013700.

19. Berger stated that an examination and comparison of the business records of DeSmidt and McClain would disclose other instances in which DeSmidt and/or McClain have caused claims to be filed with the Wisconsin Medicaid Program and private insurance companies containing false information for the purpose of obtaining monies from that program and those companies to which DeSmidt and/or McClain are not entitled were the truth known.

20. Berger stated that she believed that Dr. McClain was being trained to conduct her business in a fashion similar to that in which Dr. DeSmidt was conducting his and Dr. McClain had stated to her (Berger) that MA patient eligibility dates presented no problem

inasmuch as the service could be backdated on the claim forms to fall within the eligibility period.

21. Berger also stated that active patient files are kept in one of two types of manila folders which are color coded to indicate the source of payment (orange-MA, yellow-personal payment, and blue-other third party payment). These patient files can be found in bookshelf type files in the rear of the reception area and in racks outside of the three operatories within DeSmidt's offices. Records can also be found in the operatories themselves and in the doctor's office on occasion.

22. Berger stated the appointment book is maintained on a calendar basis, has a brown vinyl cover and contains appointments for the hygienist and each of the dentists. It is maintained by the office manager in the reception desk area.

23. Berger stated that other records are maintained in other file cabinets, in closets, in racks on a small table, in DeSmidt's desk and other areas within the suite of offices occupied by Drs. DeSmidt and McClain.

24. Berger stated that DeSmidt is knowledgeable about the Medicaid provider rules concerning dentistry and maintains two copies of provider manuals, one for the use of DeSmidt and one for the use of McClain, which are located on top of a file cabinet in the business office and that a list of uncovered services is located at the receptionist's desk. The provider manual sets out in detail covered dental services and procedures and limitations as to frequency, prior authorization and other requirements.

25. Berger identified the location of old records, ledger cards, patient files and records, the office used by Drs. McClain and DeSmidt for office work, and other

locations by oral description and by drawing a rough sketch of Dr. DeSmidt's suite of offices.

26. Affiant has visited and seen the building located at 1515 Sixth Street, Green Bay, Wisconsin, and noted that it is of brown wood and stone construction located on the south side of Sixth Street. A large wooden sign located on the northwest corner of the building contains the words "Dr. W.A. DeSmidt, Dentist; Dr. K.Y. McClain, Dentist; Bay Area Denture Lab, Towns Dental Studio; Excel Optics." Another sign observable from the parking area in the rear of the building located on the south side of the building reads "Dr. W.A. DeSmidt, lower level," and contains an arrow indicating DeSmidt's offices are to the left or west side of the building.

27. Affiant knows the following based upon six years of experience investigating suspected Medicaid fraud for both the Wisconsin Department of Health and Social Services and the Wisconsin Department of Justice. Medicaid is a program intended to provide free, or nearly free, health care to impoverished residents of the State of Wisconsin. It is administered by the State of Wisconsin and financed jointly by the state and federal government. Persons who wish to receive such health care must be certified as eligible. Health care providers who wish to supply the services must be certified. A certified provider who renders services to a recipient receives payment for those services by submitting a claim form to the Medicaid fiscal agent, E.D.S.-Federal Corporation, located at 6406 Bridge Road, Madison, Wisconsin. These claim forms must correctly identify the recipient, the provider, the service provided by description and code number, the date of service, and the fee charged. Payment is then made to the provider by E.D.S.-Federal from State of Wisconsin general revenue funds based upon reliance on the information in the

340

claim form. The payment made to providers for each individual service listed is identified on a document called a Remittance and Status Report.

Dated this 24th day of September, 1985.

(s) John P. Isely, Jr.<br>JOHN P. ISELY, Jr.<br>Investigator<br>Wisconsin Department of Justice

Subscribed and sworn to before me this 24th day of September, 1985.

(s) Robert B. McConnell

Notary Public, State of Wisconsin

My Commission: is permanent

MYSE, J. (dissenting). I dissent from that portion of the majority opinion holding the search warrant to be fatally defective because of overbreadth. The majority properly notes the deferential standard of review applicable to search warrants. They also have properly noted that the affidavit is not an essay contest for the affiant and is to be interpreted in a common sense way.

In spite of these standards of review, however, the majority concludes that the affidavit does not sufficiently establish a pattern of fraudulent practice starting at some unknown date prior to Berger's employment. The affidavit in support of the warrant refers to Berger's statements that DeSmidt was "engaged in a series of illegal activities," and that DeSmidt routinely took bite-wing X-rays that were billed as periapical X-rays because only charges for the former were normally covered under the Wisconsin Medical Assistance Program. The affidavit refers to specific instances of such conduct,

which were described as "common practice," "examples" and "done routinely."

These allegations clearly indicate that a pattern of fraudulent practice existed in the office at the time Berger started her employment. It was necessary for the state to obtain sufficient records to demonstrate the difference between the amounts billed depending on the method of payment and the way claims were processed in order to prove the alleged fraudulent practice. Because no accurate starting date of this practice was available to the state, they were unable to limit the seizure of records to a specific time period. Ultimately, they seized all of the records available in the current files for the previous six years.

The majority has failed to identify how the warrant should or could have been limited in time while at the same time be reasonably calculated to obtain all of the relevant records. In fact, the warrant was as limited as reasonably could be required under the circumstances of this case. The majority's opinion leaves the state without any way of obtaining records created prior to Berger's employment, even though she alleged that a fraudulent scheme existed prior to her employment. Because of the nature of Berger's statements, the state's need to obtain sufficient records to demonstrate the facts alleged, and a commonsense reading of the affidavit, I conclude that the warrant is not overbroad.