STATE of Wisconsin, Plaintiff-Respondent,†

v.

Lance R. WARD, Defendant-Appellant.

Court of Appeals

*No. 97–2008–CR. Submitted on briefs May 11, 1998.—Decided October 8, 1998.*

(Also reported in 588 N.W.2d 645.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Daniel P. Dunn* of *Dunn Law Offices*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Stephen W. Kleinmaier*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

Before Vergeront, Roggensack and Deininger, JJ.

DEININGER, J.   Lance Ward appeals felony convictions for possession of controlled substances with intent to deliver on the grounds that evidence derived from a search of his residence should have been suppressed. Ward contends that the search of his residence

was improper because the search warrant application did not provide sufficient facts from which the issuing magistrate could conclude there was probable cause to believe that evidence of criminal activity would be located within Ward's residence. Ward also contends that the execution of the warrant by police officers without knocking and announcing their presence violates the Fourth Amendment under the holding in *Richards v. Wisconsin*, 520 U.S. 385, 117 S. Ct. 1416 (1997).

We agree with Ward that the affidavit filed in support of the search warrant lacks a substantial basis to establish that evidence of drug dealing would likely be found within his residence. We also decline the State's invitation to adopt the "good faith exception" to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 897 (1984). Accordingly, we reverse Ward's convictions and remand with directions to suppress the evidence seized during the execution of the warrant. Given our resolution of the first issue, we do not address whether the "no knock" entry in this case was proper.

## BACKGROUND

A City of Beloit police detective received information that Lance Ward was selling marijuana. He requested a judge to issue a warrant to search Ward's residence. The detective's "Affidavit for Search Warrant" requested permission to search a two-story, single-family dwelling located at 1663 Royce in the City of Beloit. The affidavit recites that "[m]arijuana and other controlled substances, scales, packaging materials, drug paraphernalia, drug ledgers" and various other evidence of the crime of possession of THC with intent to deliver are "now located and concealed"

on the premises, and it provides the following "facts tending to establish the grounds for issuing a Search Warrant" for 1663 Royce:

1.) On 11–27–96 your Affiant received a call from a Crime Stopper who stated that Derrell Vance sells pounds of marijuana. The Crime Stopper had seen marijuana in the house of Derrell Vance. On 11–29–96 a search warrant was executed and the following items were recovered:

> 3,311 grams of marijuana
> $11,171.00 U.S.C.
> .3 grams of crack cocaine
> Lettermate digital scale
> Postal scale
> Rolling papers
> Pipe
> THC roaches
> Indicia of occupancy for Derrell and Candy Vance

The Crime Stopper stated that Derrell Vance would order his marijuana and have it distributed in a day or two. Derrell Vance would re-order immediately or within a two week span. Derrell Vance would distribute one to two pounds to each of his dealers.

On 11–30–96 a family member of Derrell Vance contacted your Affiant. This family member was told by Derrell Vance that "Lance" was his supplier of marijuana. Derrell Vance needed someone to make contact with "Lance" in order to get him out of jail.

On 12–2–96, Derrell Vance contacted SLANT. Inspector Kreitzmann of SLANT, told your Affiant that Derrell Vance wanted to make a deal to get out of jail. Derrell Vance told SLANT that his supplier was "Lance" who lives on Royce. These admissions

to SLANT by Derrell Vance were prior to Derrell Vance's court initial appearance.

The City of Beloit tax rolls shows 1663 Royce as property owned Lance R. Ward.

2.) Your affiant further states he is familiar with the confidential files kept by the Beloit Police Department Special Operations Bureau and as a result knows that the Beloit Police Department has received four pieces of intelligence indicating that Lance Ward is a drug dealer.

3.) Your affiant has been a police officer for 14 years and has participated in approximately 185 drug raids. Affiant has been actively involved in the area of Special Weapons and Tactics since 1984. Affiant is a State of Wisconsin Certified Instructor in the area of arrest and control procedures, both receiving and providing training. Affiant is an Instructor in the area of Hostage Rescue and High Risk Warrant Service, both receiving and providing training. Based on affiant's training, experience and associations with others in those fields, he is aware that persons involved in many illegal activities, including drug related crimes often arm themselves with weapons, including firearms and sometimes use those weapons against the police and others. These persons will also destroy or conceal evidence if given time. Affiant, based on the stated experience, training and association, is aware that a very important factor in controlling persons and in particular, during drug raids, is surprise and speed. Affiant is also aware that control reduces the likelihood of injury to all involved. Affiant is aware that announcement eliminates surprise and provides persons within a residence time to take actions that would require a reaction by officers. For these reasons affiant requests that a NO KNOCK search warrant be issued. Affiant, based on his training and experience with others in

that field believes that where illegal drugs are sold by one person, they are purchased by others and are commonly carried on the persons of both. It is also true of locations where drug use takes place, persons commonly carry illegal drugs on their body.

The judge issued the search warrant for 1663 Royce and authorized a "no knock" entry. When executing the warrant, the police broke down the door and entered Ward's home as they simultaneously identified themselves as police. Ward was at home, and the police seized 2,578 grams of marijuana, 180 grams of cocaine, and other evidence such as scales, cash and cell phones.

Ward was arrested and charged with five controlled substances offenses. He moved to suppress the seized evidence, claiming the warrant was issued without probable cause and had been executed in violation of the rule of announcement. The trial court denied the motion to suppress and Ward then pled no contest to two counts of possession of controlled substances with intent to deliver.[1] Prior to sentencing, Ward moved for reconsideration of his suppression motion, which the court denied. Ward appeals the judgment of conviction.

---

[1] Ward was convicted of possessing, with intent to deliver, 40 to 100 grams of cocaine, in violation of § 961.41(1m)(cm)4, STATS., and was sentenced to five years in prison and a fine of $4,610. He was also convicted of possessing, with intent to deliver, 500 to 2500 grams of THC, in violation of § 961.41(1m)(h)2, STATS., for which sentence was withheld and he was placed on five years consecutive probation with a condition that he pay a fine of $1,915.

## ANALYSIS

*a. Standard of Review.*

■ The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, § 11 of the Wisconsin Constitution is virtually identical. When probable cause for issuance of a warrant is challenged on appeal, our focus is not on the trial court's decision to grant or deny a suppression motion but on the issuing magistrate's determination that the application for the warrant stated probable cause. The person challenging the warrant bears the burden of demonstrating that the evidence before the issuing magistrate was clearly insufficient. *See Ritacca v. Kenosha County Court*, 91 Wis. 2d 72, 78, 280 N.W.2d 751, 754 (1979).

■ Our review of the magistrate's probable cause determination is not de novo; rather, we pay "great deference" to the magistrate's decision. *See Illinois v. Gates*, 462 U.S. 213, 236 (1983); *State v. DeSmidt*, 155 Wis. 2d 119, 132, 454 N.W.2d 780, 785–86 (1990). "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely deter-

mined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109 (1965). The Wisconsin Supreme Court has stated that such a deferential standard of review is " 'appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.' " *State v. Kerr*, 181 Wis. 2d 372, 379, 511 N.W.2d 586, 589 (1994) (citations omitted).

The test for the issuance of a search warrant is whether, considering the totality of the circumstances set forth in support of the warrant, probable cause exists to believe that objects linked to the commission of a crime are likely to be found in the place designated in the warrant. *See State v. Ehnert*, 160 Wis. 2d 464, 470, 466 N.W.2d 237, 239 (Ct. App. 1991). Probable cause is not a technical or legalistic concept, nor is it susceptible of "stringently mechanical definitions." *State v. Tompkins*, 144 Wis. 2d 116, 125, 423 N.W.2d 823, 827 (1988). Rather, it is a "flexible, common-sense measure of the plausibility of particular conclusions about human behavior." *Kerr*, 181 Wis. 2d at 379, 511 N.W.2d at 588. All that is required of the issuing magistrate is that he or she "simply . . . make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

b. *Probable Cause to Search 1663 Royce.*

Ward conceded in the trial court that the warrant application contained sufficient information to establish probable cause that he had engaged in criminal activity. Ward's counsel informed the court, "I think that you probably could have issued a warrant for his

319

arrest."[2] Accordingly, Ward argues on appeal only that the issuing judge erred in concluding there was probable cause to believe that evidence of drug dealing would be found in his residence. Given Ward's concession, we do not address whether the warrant application was insufficient for reasons other than a lack of information linking evidence of criminal activity to the premises searched.

The State does not dispute that the affidavit in support of the search warrant contains no information that Ward had sold marijuana out of his residence at 1663 Royce, or that controlled substances or related items had been observed there, recently or ever. Rather, the affidavit presents only the following information, none of which provides a direct link between evidence of criminal activity and the dwelling at 1663 Royce: Derrell Vance, who had recently been arrested for dealing marijuana, identified "Lance" on Royce Street as his supplier; Beloit property tax records indicated that Lance Ward owned the property at 1663 Royce; and police had received four "pieces of intelligence" indicating that Lance Ward is a drug dealer. In the concluding paragraph of the affidavit, the detective avers that, based on his training and experience, drug sellers and buyers commonly carry contraband on their "persons," and that "where drug use takes place, persons commonly carry illegal drugs on their body." The detective provides no similar, experience-based statement regarding the propensity of drug dealers to

---

[2] The same circuit judge who presided over proceedings in Ward's case had previously issued the warrant for the search of Ward's residence.

conceal controlled substances and other evidence of dealing within their residences.[3]

The trial court acknowledged the affidavit's failure to provide a direct connection between the items sought and the dwelling to be searched, but concluded that it was reasonable for an issuing magistrate to infer that drug dealers would store their products and other evidence of criminal activity within their residences:

> Well, isn't it a reasonable inference, though, given what we all know about the life in the world of drug dealers, that drugs are ordinarily dealt out of somebody's house so that they don't maintain corner stores, candy stores?

When defense counsel replied that, in his experience, drugs are sold and stored at various locations other

---

[3] During argument before the trial court on Ward's motion for reconsideration of the denial of his suppression motion, Ward's counsel told the court:

> Well, I think it would have been proper had [the detective] simply inserted a sentence in there that Mr. Ward is a drug dealer and, based upon my experience, drug dealers keep drugs in their houses. You will not find that language. That is what the State needs in this case.

We do *not* decide on this appeal whether the inclusion of such a statement, based on the affiant's training and experience, provides a substantial basis for a finding of probable cause to believe that evidence of drug dealing would likely be found within a dealer's residence. *See* 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 3.7(d) at 379 (3d ed. 1996) ("[I]t is commonly held that [a gap in information linking drug sales to the dealer's home] can be filled merely on the basis of the affiant-officer's experience that drug dealers ordinarily keep their supply, records and monetary profits at home." (footnote omitted)). *But see State v. Mische,* 448 N.W.2d 415, 422 (N.D. 1989), which we discuss below in the text of this opinion.

than personal residences, such as in taverns and automobiles, the court stated that its experience was to the contrary:

> [M]y experience has been that in the last eight years, I have had numerous cases that deal with this kind of thing, and I can't remember a time when somebody was dealing drugs when they weren't being dealt out of the person's house[.] Now, maybe there are different customs everywhere, but here in Beloit, that's been every case that I have ever had.

Later, when denying Ward's motion to reconsider the issue prior to sentencing, the court informed counsel that "I rely on my own experience all the time in reviewing these things."

The State, citing a number of federal cases, argues that a magistrate can reasonably make precisely the inference made by the issuing judge in this case. *See United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988) ("[T]he nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence.") The Seventh Circuit has stated that it is reasonable for an issuing magistrate to infer "that evidence of drug dealing is likely to be found where the dealers live." *United States v. Singleton*, 125 F.3d 1097, 1102 (7th Cir. 1997) (citing *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991)); *see also United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993) ("In the Ninth Circuit, we have recognized that '[i]n the case of drug dealers, evidence is likely to be found where the dealers live.' " (citation

omitted)).[4] Emphasizing the deference due an issuing magistrate's judgment in weighing the sufficiency of search warrant applications in marginal cases, the State asks us to follow these cases and affirm because the issuing judge here "relied on his common sense and experience in inferring from the information in the affidavit that evidence of drug dealing would be found at the home of the defendant, who was shown by the affidavit to be a drug dealer."

Whether a warrant-issuing magistrate may rely on his or her own experience to infer, solely from information that a person sells drugs, that evidence of drug dealing will likely be found within the person's residence is a question of first impression in our state. The Wisconsin Supreme Court has recognized, however, that issuing magistrates may draw "the usual inferences which reasonable men draw from evidence" when determining whether a particular warrant application states probable cause to believe that evidence of criminal activity is likely to be found in a designated location. *See State v. Starke*, 81 Wis. 2d 399, 409, 260 N.W.2d 739, 745 (1978) (citing *United States v. Ventresca*, 380 U.S. 102, 106 (1965)). In *Starke,* the supreme court concluded that "only one inference"—that a certain reported fact was based on the personal observation of one of the arresting officers—could be drawn from the affidavit. The court

---

[4] Some U. S. Circuit Courts of Appeal, however, have been reluctant to endorse a "blanket" inference that contraband will likely be found in the residences of drug dealers. *See, e.g., United States v. Lalor*, 996 F.2d 1578, 1583 (4th Cir. 1993) ("In this and other circuits, residential searches have been upheld only where some information links the criminal activity to the defendant's residence.").

held that the affidavit was therefore not deficient for not expressly averring that the statement was based on personal observation. *See id.*

Similarly, in *State v. Benoit*, 83 Wis. 2d 389, 399, 265 N.W.2d 298, 303 (1978), the supreme court reversed a suppression order that was based on the trial court's determination that testimony in support of the warrant "did not specifically show that the items to be seized were still at the suspect's residence." The supreme court cited the "reasonable inference" discussion in *Starke* and concluded that "[t]he fact that the informant was the suspect's brother who knew the place to be searched was his brother's residence, coupled with the fact that the hearing was held only twelve days after the robbery, permits a reasonable inference that the items listed in the warrant could still be found in the place to be searched." *Id.* at 399–400, 265 N.W.2d at 303.

The inferences ratified in *Starke* and *Benoit* dealt with a magistrate's conclusions regarding either the basis for information contained in an affidavit or the timeliness of the information. Here, we are asked to ratify a magistrate's inference which supplies information that is wholly missing from a warrant application. In *United States v. Ventresca*, upon which our supreme court relied in both *Starke* and *Benoit*, the Supreme Court instructed reviewing courts to test and interpret affidavits for search warrants "in a common-sense and realistic fashion," and to defer to the issuing magistrate in "doubtful or marginal cases," but the court also cautioned:

> This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that

probable cause exists without detailing any of the "underlying circumstances" upon which that belief is based. *Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police.*

*United States v. Ventresca*, 380 U.S. 102, 108–09 (1965) (emphasis added).[5] Similarly, in discussing the function of an issuing magistrate in the context of an arrest warrant, our supreme court has stated:

> [I]t is constitutionally essential that the magistrate be mindful of the underlying circumstances before he authorizes the issuance of a warrant. The magistrate may not accept without question the suspicions or conclusions of a complainant but, on the contrary, must determine the existence of probable cause after being apprised of the relevant facts. In performing this function, the magistrate or court commissioner serves as a judicial officer and must act in a neutral and detached manner.

*State ex rel. White v. Simpson*, 28 Wis. 2d 590, 594, 137 N.W.2d 391, 303 (1965).

The State quotes at length from *State v. Higginbotham*, 162 Wis. 2d 978, 989–92, 471 N.W.2d 24, 29–30 (1991) to support its argument that the deferential standard for our review, which we have described

---

[5] The U. S. Supreme Court in *United States v. Ventresca*, 380 U.S. 102, 109 (1965), reversed a Court of Appeals holding that a warrant affidavit was insufficient because it "failed to clearly indicate which facts alleged therein were hearsay or which were within the affiant's own knowledge." There was no question that the affidavit presented information which focused on activities and evidence at the location to be searched, a house in which a still was believed to be operating. *See id.* at 112–16.

above, requires us to endorse the issuing judge's inference that drug dealers invariably have evidence of criminal activity in their homes. The deference we must accord to an issuing magistrate, however, "is not boundless." *See United States v. Leon*, 468 U.S. 897, 914 (1984). "[R]eviewing courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.' " *Id.* at 915 (citation omitted). The supreme court acknowledged this principle in *Higginbotham*. After concluding that the magistrate had properly found probable cause to believe that certain individuals had committed arson, the court did not simply accept that conclusion as sufficient to establish that evidence of the arson would be found in the home and vehicle of one of the suspected arsonists. Rather, the court stated that it "must still determine whether there was a substantial basis for the issuing judge to find that there was probable cause that the evidence would be found" at the locations to be searched. *Higginbotham*, 162 Wis. 2d at 995, 471 N.W.2d at 31. In support of the foregoing statement, the court quoted the following from *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982): "[T]he fact that there is probable cause to believe that a person has committed a crime does not automatically give the police probable cause to search his house for evidence of that crime."[6]

---

[6] The supreme court in *State v. Higginbotham*, 162 Wis. 2d 978, 995, 471 N.W.2d 24, 31–32 (1991), concluded that there was "a substantial basis for the issuing judge to conclude that there was a 'fair probability' that evidence would be found" at the residence. It determined that:

[u]nder the circumstances of this case, it was reasonable to infer that the items sought might be found at the . . . residence in view of

Thus, we are not convinced that the holding urged by the State, that a magistrate's inference that drug dealers keep incriminating evidence in their homes is always reasonable, is consistent with Wisconsin case law.[7] Such a blanket rule would relieve law enforce-

> the close connection all three suspects had to the residence. Because of their nexus to the home, the . . . property was a likely storage or hiding place for the sought-after shoes, glove, and flammable liquids that could link the suspects to the crime. These are items commonly kept at the home.

*Id.* at 995–96, 471 N.W.2d at 32. We note further that the affidavit presented to the issuing judge in *Higginbotham* also reported the statement of a "citizen witness" that he had, several months earlier, placed a five-gallon container of a turpentine-like substance at the residence to be searched, and that "said container and its contents should still be at [the] residence." *Id.* at 984–85, 471 N.W.2d at 27.

[7] The dissent finds support for the State's position in *State v. Kerr*, 181 Wis. 2d 372, 511 N.W.2d 586 (1994). We do not believe *Kerr* is instructive on the present facts. In *Kerr*, emphasizing the "great deference" to be accorded the warrant-issuing magistrate's decision, the court found a "minimal factual basis to support probable cause." *Id.* at 380, 511 N.W.2d at 589. The issue in that case, however, was whether the circumstantial evidence presented to the magistrate permitted an inference that Kerr was engaged in criminal activity. The evidence consisted of an officer's training- and experience-based description of a drug trafficker's "profile," certain observations by citizen witnesses that were consistent with that profile, and Kerr's accompaniment by a local man with a history of drug dealing. *See id.* at 376–77, 511 N.W.2d at 587–88.

The court addressed only whether this was sufficient to support a search warrant in light of Kerr's argument that the drug courier profile and observations did "not necessarily indicate possession of drugs." *Id.* at 382, 511 N.W.2d at 590. The court did not discuss the linkage between evidence of criminal activity and the location searched (Kerr's motel room), presum-

ment of any responsibility to place before a magistrate the "underlying circumstances" which establish a "substantial basis" that evidence of drug dealing will likely be found in the dealer's residence. The United States Supreme Court has cautioned against the adoption of "bright-line rules" in the area of search and seizure, instructing instead that Fourth Amendment reasonableness inquiries should be grounded in the individual facts and circumstances of a particular case. *See Ohio*

---

ably because that aspect of the information in support of the warrant was not challenged. In this regard, we note that the information provided to the magistrate in *Kerr* included the following: Kerr was from Seattle, Washington, and had rented a motel room in Brown County for a two- to four-night stay; that Kerr had a large amount of cash, a metal suitcase and briefcase, and possibly a concealed firearm with him when he checked in to the motel room; and that drug traffickers often use metal suitcases in an apparent effort to "evade detection of controlled substances." *Id.* at 376–77, 511 N.W.2d at 587–88.

Had the court reviewed this information to determine whether it supported a reasonable inference that evidence of drug dealing would be found in Kerr's motel room, it may well have concluded it did so, since the facts linking evidence of criminal activity to the motel room in question were considerably stronger than those in the affidavit presently before us. Unlike the present affidavit, the information provided to the magistrate in *Kerr* placed suspected evidence of drug dealing (a weapon, a large sum of cash, and the contents of the metal cases) in the suspect's possession as he entered the room to be searched. Moreover, being a non-resident of the area making a short-term stay, it is unlikely that Kerr would have had places to conceal contraband other than the room he was temporarily occupying. Here, nothing in the affidavit before us places evidence of drug dealing anywhere near Ward's residence, nor does the affidavit provide any reason to believe that Ward lacked access to locations other than his residence at which he could conceal evidence of his illegal activities.

*v. Robinette*, 519 U.S. 33, 117 S. Ct. 417, 421 (1996) ("[W]e have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry."). And, in *Richards v. Wisconsin*, 520 U.S. 385, 117 S. Ct. 1416, 1421 n.4 (1997), the court noted that it is "somewhat dangerous to ground exceptions to constitutional protections in the social norms of a given historical moment." It held that it is the duty of a court, in each case, to determine whether the facts and circumstances of a particular entry justify dispensing with the knock-and-announce requirement, concluding that "Wisconsin's blanket rule" authorizing such entries in all felony drug cases was impermissible under the Fourth Amendment. *See id.* at 1421–22.

We also find the federal cases on which the State would have us rely unpersuasive for another reason. In many of the cases, even though the courts state that it is reasonable to infer that evidence of criminal activity will be found within the residences of drug dealers, the information presented to the issuing magistrates includes facts that link the residences in question to criminal activity. For instance, in *United States v. Singleton*, 125 F.3d 1097, 1102–03 (7th Cir. 1997), two drug purchases had been made in the vicinity of the residence to be searched. In *United States v. Reddrick*, 90 F.3d 1276, 1279 (7th Cir. 1996), an informant had told police that he or she "had seen about 13 kilos of cocaine inside of the residence" on the day the warrant was issued to search the residence in question. And in a case originating in Wisconsin, *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991), the court concluded that the warrant to search one residence was valid because it was based on information that drug transactions had occurred therein, and that the application for a second warrant to search the defendant's

permanent residence was also sufficient. The application for the second warrant was based on the fact that cocaine and other evidence of drug dealing had been found in the first residence and in an automobile belonging to the suspect, and on an officer's statement that "based on nine years of investigating traffic—drug trafficking in the Milwaukee area and conducting hundreds of investigations . . . . I find in many instances [major drug dealers] keep moneys, drug records, and other additional quantities of drugs, including cocaine, at the residence they do not sell out of."[8] *Id.* at 1186.

The State also refers us to *State v. Bernth*, 246 N.W.2d 600 (Neb. 1976), which presents facts more closely aligned with those we now consider. The affidavit in *Bernth* stated only that the suspect had told a reliable informant that he had "pounds of grass" for sale, that the informant had identified the suspect's place of residence, and that the affiant "believed the controlled substance was situated there." *Id.* at 601. The Nebraska Supreme Court thus posed the question, "Is this sufficient identification of the situs of the marijuana?" *Id.* It answered in the affirmative, concluding:

> An individual's residence is a private area inaccessible to all others. Its contents can only be determined by persons other than the occupants or invitees on the basis of observation of the inhabitants, their actions, and remarks. Seldom can an affiant seeking a search warrant state positively that a certain residence contains contraband. Such a conclusion can only be arrived at by a magistrate

---

[8] As we have noted above, the affidavit before us contains no similar experience-based statement from the detective who sought the warrant to search Ward's residence, and we do not address whether the presence of such a statement would produce a different result. *See* n.3, above.

on consideration of known facts and common-sense probabilities. Controlled substances are of considerable value on the street, much sought after by users, and, unless kept in a safe place, subject to theft. Wide experience over the years has demonstrated that such items are usually kept in a dealer's place of residence and under constant surveillance or supervision. The defendant was obviously a dealer. He had 'pounds' of marijuana. Such a quantity would not be carried on his person or left unprotected in an automobile. Where then does logic and common sense dictate that it would be kept? There is only one answer, his residence. A magistrate is not required to ignore the lessons of experience or to disregard logic and common sense. We conclude that the affidavit for a search warrant was sufficient and the motion to suppress evidence properly overruled.

*Id.* at 602–03.

We concur with the Nebraska court's observation that direct evidence that controlled substances are "positively" to be found at a certain residence will seldom be available to a search warrant applicant. However, our rejection of the State's position on this appeal does not mean that police must obtain a direct observation of controlled substances on the premises before a warrant may be obtained to search a suspected drug dealer's home. *See United States v. Lalor*, 996 F.2d 1578, 1583 (4th Cir. 1993) (citing examples of "some information [which] links the criminal activity to the defendant's residence," such as: a prior discovery of contraband in the suspect's place of residence; a suspect's return to his residence between negotiating and consummating a drug transaction; and surveillance which connects drug activity to a suspect's residence). Professor LaFave cites additional examples, including

331

drug sales which occur "near the home." 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 3.7(d) at 378–79 & nn.143–44 (3d ed. 1996).

We find the reasoning of two other state supreme courts which have addressed the issue before us to be more persuasive. In *State v. Silvestri*, 618 A.2d 821, 824 (N.H. 1992), the New Hampshire Supreme Court declined the very invitation the State extends to us here: "The State urges us to adopt a per se rule that if the magistrate determines that a person is a drug dealer, then a finding of probable cause to search that person's residence automatically follows." The court instead followed its "consistent" requirement that "some nexus between the defendant's residence and drug-dealing activities [be shown] in order to establish probable cause to search the residence." *Id.* In *State v. Mische*, 448 N.W.2d 415, 416 (N.D. 1989), the North Dakota Supreme Court, in refusing to sustain a warrant even though a police officer had averred in the warrant application that, based on his training and experience, he believed that "individuals who regularly deal in controlled substances keep controlled substances, paraphernalia and documentation . . . at their residence." The court pointed to the "special protection" afforded to personal residences under the Fourth Amendment:

> We do not conclude that general allegations that contraband may be kept at the residence of the person involved cannot be considered in establishing probable cause to issue a warrant. However, in view of the special protection given to the home by the Fourth Amendment to the United States Constitution and Article I, Section 8, of the North Dakota Constitution, something additional and more objective than the facile conclusion that con-

traband is ordinarily kept in the home should be required to establish probable cause to search that home . . . .

*Id.* at 422.

In summary, we conclude the affidavit presented to the issuing judge in support of a warrant to search 1663 Royce did not provide a substantial basis for finding probable cause that evidence of drug dealing would likely be found at that location. Although we will defer to a magistrate's conclusion whenever possible, and we will permit reasonable inferences to sustain the reliability and timeliness of information in a warrant application, neither the Fourth Amendment nor Article I, § 11 of the Wisconsin Constitution permits a magistrate to infer a link between evidence of drug dealing and the dealer's residence when the application is devoid of any facts or information from which to infer such a link. Accordingly, we reverse Ward's judgment of conviction and direct that on remand the evidence seized from 1663 Royce be ordered suppressed.

### c. The Good Faith Exception under U.S. v. Leon.

The State argues that even if this court concludes the present warrant application did not provide a substantial basis for the issuing judge to find probable cause for a search of 1663 Royce, the evidence seized is still admissible under the good faith exception to the exclusionary rule. *See United States v Leon*, 468 U.S. 897, 926 (1984). The State reasons that because the language of the Wisconsin and United States Constitutions regarding search warrants is virtually identical, and since Wisconsin courts generally follow federal precedents when interpreting our own constitution, we

333

should adopt the good faith exception set forth in *Leon*. The State further notes that when the Wisconsin Supreme Court decided that evidence seized in violation of the Wisconsin Constitution is not admissible, it noted that an exclusionary rule was consistent with then existing federal decisions. *See Hoyer v. State*, 180 Wis. 407, 415, 193 N.W. 89, 92 (1923).

Even if the premises for the State's argument are valid, it does not necessarily follow that this court is free to graft the good faith exception onto the exclusionary rule adopted by the supreme court in *Hoyer*. We have previously concluded that adopting the State's position is tantamount to "effectively overruling *Hoyer*," which "is neither our function nor our privilege." *State v. Grawien*, 123 Wis. 2d 428, 432, 367 N.W.2d 816, 818 (Ct. App. 1985); *see also State v. DeSmidt*, 151 Wis. 2d 324, 333, 444 N.W.2d 420, 423–24 (Ct. App. 1989), *rev'd on other grounds*, 155 Wis. 2d 119, 454 N.W.2d 780 (1990).[9] We are as bound by the previously published decisions of this court as we are by those of the Wisconsin Supreme Court. *See Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246, 256 (1997). Accordingly, we decline to consider whether, on the present facts, the evidence seized dur-

---

[9] In another opinion of this court, *State v. Collins*, 122 Wis. 2d 320, 363 N.W.2d 229 (Ct. App. 1984), we relied on the rationale of *United States v. Leon*, 468 U.S. 897 (1984) in concluding that, even though a police officer's entry of a home to arrest the defendant was unlawful, the officer had "acted in objectively reasonable reliance on an arrest warrant which [was] later determined to be invalid." *Collins*, 122 Wis. 2d at 325–27, 363 N.W.2d at 231–32. We did not, however, consider or discuss whether our application of the *Leon* rationale to the invalid arrest warrant was consistent with or permissible under the holding in *Hoyer v. State*, 180 Wis. 407, 193 N.W. 89 (1923).

ing the search of 1663 Royce should be admitted even though it was obtained under a search warrant not supported by probable cause.

### d. The Authorization for a "No Knock" Entry.

Ward also argues that the seized evidence should have been suppressed because it was obtained following a "no knock" entry, which the issuing judge authorized in violation of the holding of *Richards v. Wisconsin*, 520 U.S. 385, 117 S. Ct. 1416 (1997). In response, the State again urges the adoption of the *Leon* good faith exception, especially since the police in this case obtained the no knock authorization in a manner that was consistent with then existing precedent of our state's highest court. *See State v. Stevens*, 181 Wis. 2d 410, 424–25, 511 N.W.2d 591, 595 (1994) (when executing search warrants in felony drug cases, police may enter without announcement); *see also State v. Richards*, 201 Wis. 2d 845, 549 N.W.2d 218 (1996), *rev'd sub nom, Richards v. Wisconsin*, 520 U.S. 385, 117 S. Ct. 1416 (1997).[10] Because we have concluded that the search warrant was not properly grounded on probable cause to search 1663 Royce, we need not address whether the no knock entry in this case failed to comply with constitutional requirements.

---

[10] The present warrant was issued on December 4, 1996, which was after the Wisconsin Supreme Court had decided *State v. Richards*, 201 Wis. 2d 845, 549 N.W.2d 218 (1996), but before the U. S. Supreme Court decided *Richards v. Wisconsin*, 520 U.S. 385, 117 S. Ct. 1416 (1997).

## CONCLUSION

For the reasons discussed above, we reverse Ward's judgment of conviction and remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.

ROGGENSACK, J. *(dissenting).* Today the majority reverses Ward's conviction because it concludes there was not probable cause to issue the warrant which authorized the search of his residence, where 2,578 grams of marijuana, 180 grams of cocaine and various other articles associated with the sales of drugs were found. The majority opinion does so based on a standard that does not accord great deference to the common sense conclusions of the judge who issued the warrant; and therefore, I must respectfully dissent.

In order to prevail on appeal, Ward must prove that the evidence before the issuing judge was clearly insufficient to support the judge's conclusion that there was probable cause to issue the warrant. *Bast v. State,* 87 Wis. 2d 689, 692, 275 N.W.2d 682, 684 (1979). There are two elements of a probable cause determination which an issuer must make before a warrant can be issued: (1) the objects sought must be linked with the commission of a crime, and (2) there must be a fair probability that those objects will be found in the place to be searched. *State v. Benoit,* 83 Wis. 2d 389, 395, 265 N.W.2d 298, 301 (1978). Here, there is no question that the drugs and drug paraphernalia, if found, would be linked with the commission of a crime. Rather, the focus of the challenge to the warrant is on the judge's conclusion that there was a fair probability that drugs

and drug paraphernalia would be found at Ward's residence.

This court accords "great deference" to the probable cause determinations of the issuing judge. *State v. Higginbotham*, 162 Wis. 2d 978, 989, 471 N.W.2d 24, 29 (1991). The facts supporting the warrant must be interpreted and tested in a common sense and realistic fashion, realizing they are "normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once enacted under common law pleadings have no proper place in this area." *Id.* at 991, 471 N.W.2d at 30 (quoting *State v. Starke*, 81 Wis. 2d 399, 410, 260 N.W.2d 739, 745 (1978) (further citations omitted)). If there is a "fair probability" that evidence of a crime may be found at the place specified in the warrant, there is probable cause to issue the warrant. *Higginbotham*, 162 Wis. 2d at 995, 471 N.W.2d at 31. In determining whether a fair probability exists, all reasonable inferences from the facts set out in support of the warrant may be considered by the issuer. Circumstantial evidence is probative, as well as direct evidence. *See State v. Kerr*, 181 Wis. 2d 372, 381, 511 N.W.2d 586, 589 (1994).

Here, the majority reverses because there was no specific statement in the affidavit that drugs were actually seen at Ward's residence. In so doing, it ignores the reasonable inferences which flow from the facts asserted in the affidavit in support of the warrant. For example, the warrant was issued for 1663 Royce, which the Beloit Police Department had identified as Ward's residence. The affiant, a veteran officer of the Beloit Police Department, had knowledge of several tips from reliable informants that Ward was selling drugs. In one tip, Ward was named as the supplier of

Darrell Vance, who had been arrested with 3,311 grams of marijuana and other drugs in his possession. Therefore, the officer had information that Ward was not simply selling a small baggie or two of drugs, but rather, that he supplied drug dealers. A reasonable inference from the size of the cache at Vance's residence was that there would be large quantities of marijuana associated with Ward because he had supplied large quantities of drugs to Vance. Furthermore, the information identifying Ward as a drug dealer and as the supplier of Vance was received within a few days of the warrant being signed on December 4, 1996; therefore, it was fresh information.

It was reasonable for the issuing judge to believe that if Ward was supplying drug dealers, he had to keep large quantities of drugs somewhere. Therefore, the question presented by this appeal is whether, given the large quantities of marijuana that Ward was reported to have provided to Vance recently, it was a reasonable inference that he would have drugs and evidences of drug dealings in his home.

A similar question was addressed by the Wisconsin Supreme Court in *Kerr*. There, the court concluded that a search warrant for the motel room occupied by Kerr, who was not even a known drug dealer, but had merely behaved in a "suspicious"[1] fashion when entering the motel, was valid. The court affirmed the warrant issuer's decision that there was probable cause to search Kerr's room because of the "practical common sense" manner in which those decisions are to

---

[1] Kerr had paid for the room with cash. He had a metal suitcase which he did not want anyone to help him carry. He did not give a definite date for leaving the hotel. And a citizen informant thought that he might have a concealed weapon on him, though no weapon had actually been seen.

be made and reviewed on appeal. *Kerr*, 181 Wis. 2d at 379, 511 N.W.2d at 588. Here, the case is much stronger for upholding the warrant because there was evidence, both from Vance and from confidential informants, that Ward was an active drug dealer and that he was providing large quantities of drugs to others. Knowing those facts increased the inference that there was a fair probability that Ward had drugs and drug paraphernalia hidden or stored in his home.[2] While those facts do not create an "irrefutable inference" that drugs will be found in Ward's residence, such an inference is a reasonable inference, as *Kerr* teaches.

*Higginbotham* also focused on probable cause as it related to the location for which a search warrant was issued. There again, no one had actually seen the shoes, gloves and flammable liquids that were the subjects of the warrant. Rather, the location was identified because it was the residence of three persons who had been acting in a very suspicious manner subsequent to an attempted arson. Writing for the majority in *Higginbotham*, Justice Bablitch clearly permits consideration of whether the sought after items are commonly kept at home, as a reasonable consideration for the issuer of a warrant.

> Because of their nexus to the home, the Frasier property was a likely storage or hiding place for the

---

[2] Although I agree with the majority that just because the police have evidence that a person is selling drugs it does not always follow that he will keep them in his home, I do not believe "always" is the test established by *Kerr* and *Higginbotham*. Rather, the issuer of the warrant is to determine only whether it is "fairly probable" that given the large quantities of drugs Ward was believed to have, they could be present in his home.

> sought-after shoes, gloves, and flammable liquids that could link the suspects to the crime. These are items commonly kept at the home.

*Higginbotham*, 162 Wis. 2d at 995–96, 471 N.W.2d at 32. In so reasoning, Justice Bablitch applied a common sense approach to the court's review of the issuer's decision and permitted the issuer to rely on all reasonable inferences from the facts presented. That is no different than what was asked of the issuing judge in this case. Here, the judge who issued the warrant on Ward's residence could have reasonably concluded that Ward stored or hid drugs in his house. According to that judge, it is a common occurrence for drug dealers.

Additionally, while I agree with the majority's statement that this court is not "mandated" to adopt the Seventh Circuit's conclusions about the likelihood of finding drugs in the home of a drug dealer, we should also not ignore the common sense reasoning apparent in *United States v. Singleton*, 125 F.3d 1097 (7th Cir. 1997).[3] Indeed, the standards set out in *Singleton* that "[i]n issuing a search warrant, a magistrate is given license to draw reasonable inferences concerning where the evidence referred to in the affidavit is likely to be kept, taking into account the nature of the evidence and the offense," *id.* at 1102, are so like those set out by the Wisconsin Supreme Court which has directed that we must accord "great deference" to the probable cause decisions of those who issue search warrants and their decisions must stand " 'unless the defendant establishes that the facts are clearly insuffi-

---

[3] We have been advised by the Wisconsin Supreme Court that "Art. I, Sec. 11 of the Wisconsin Constitution and the Fourth Amendment of the United States Constitution [interpreted in *Singleton*] are substantially the same." *State v. DeSmidt*, 155 Wis. 2d 119, 129, 454 N.W.2d 780, 784 (1990).

340

cient to support a finding of probable cause.' " *Kerr*, 181 Wis. 2d at 380, 511 N.W.2d at 589 (citing *State v. Higginbotham*, 162 Wis. 2d at 989, 471 N.W.2d at 29).

Because my analysis has led me to conclude that Ward has not met his burden of proving that the facts, and the reasonable inferences therefrom, contained in the affidavit in support of the warrant are "clearly insufficient" to support probable cause to believe that drugs and drug paraphernalia would be found in Ward's residence, I would affirm the decision of the circuit court in regard to the warrant, and I respectfully dissent from the majority opinion.[4]

---

[4] This dissent does not deal with whether a good faith exception exists for a no-knock warrant which was issued prior to the United States Supreme Court's decision in *Richards v. Wisconsin*, 520 U.S. 385 (1997), because the majority opinion has not addressed this concern and therefore, we may be in agreement.